The MADIO GROUP, INC., Plaintiff,

v.

J. Patrick SHORES, and Life Insurance Company of North America, Defendants.

No. 91–796–Civ–T–17C.

United States District Court, M.D. Florida, Tampa Division.

July 24, 1995.

Kevin P. O'Connor, O'Connor & Lemos, P.A., Coral Gables, FL, R. Fred Lewis, Kuvin, Lewis, Restani & Stettin, P.A., Miami, FL, for Madio Group, Inc.

John E. Kramar, Law Office of John E. Kramar, Houston, TX, for J. Patrick Shores, Shores Group, Inc.

Randall L. Allen, H. Suzanne Smith, Alston & Bird, Atlanta, GA, Gary W. Miracle, Law Offices of J.A. Setchel, Tampa, FL, for Life Insurance Company of North America.

### ORDER

JENKINS, United States Magistrate Judge.

Before the court is Defendant Life Insurance Company of North America's (LINA) Motion for Summary Judgment (Dkt. 111), and plaintiff's response (Dkt. 129).[1]

## I. FACTUAL BACKGROUND

Plaintiff brings this action seeking damages against defendant Shores for fraud, negligent misrepresentation, breach of contract, conversion, tortious interference with a business relationship, and violations of the

1. The parties have consented to proceed before the Magistrate Judge pursuant to Title 28, United States Code, Section 636(c) and Fed.R.Civ.P. 73.

2. On January 17, 1995, this court dismissed The Shores Group, Inc. from this action because it

Florida RICO Act.[2]  In addition, it proceeds against defendant LINA based upon agency principles of law.  Plaintiff seeks damages in the form of lost commissions arising out of its alleged attempts to secure insurance through defendants.

In January 1991 the Sarasota County Medical Services (SCMS) and the South County Medical Association (SCMA) requested that Ralph Madio, acting on behalf of the plaintiff corporation, locate a fully insured medical plan.  Ralph Madio is the sole shareholder and president of the plaintiff Madio Group, Inc.  His brothers, Robert Madio and Donald Madio, are officer employees of the plaintiff corporation.

Time was of the essence because the Florida Department of Insurance (DOI) mandated that SCMS and SCMA immediately—within thirty (30) days—obtain a fully insured plan to replace their illegal Multiple Employer Welfare Association (MEWA) plan.  Ralph Madio became the insurance agent of record for SCMA on February 6, 1991 and for SCMS on March 12, 1991.

On February 7, 1991, Ralph Madio contacted Patrick Shores (Shores), President of the Shores Group, Inc., to inquire about procuring health insurance coverage for the SCMA and SCMS groups.  On February 15, 1991, Shores contacted Philip Hottel, a LINA representative.  Shores was interested in having CIGNA provide reinsurance coverage for a new company the Shores Group planned to purchase.  The discussions between Shores and Hottel concerned reinsurance only.  Their discussions resulted in a confirmation letter from Hottel to Shores dated February 21, 1991.  The letter provided in relevant part:

> Confirming our discussions on your group health book of business, please be advised that CIGNA is willing to fully reinsure your entire book of health business effective March 1, 1991.

lacked subject matter jurisdiction over this defendant due to receivership proceedings pending in the State of Georgia.  (Dkt. 109).  Moreover, plaintiff has voluntarily withdrawn its Florida RICO Act claim.  (Dkt. 129, p. 29).

In addition, CIGNA recognizes and has appointed J. Patrick Shores as a licensed Agent to write business for CIGNA. This will also apply to writing business in any other state besides Georgia and we will supply you with the appropriate non-resident licensing forms required to do business in the applicable state.

I am extremely excited about the opportunity to work with you and your firm and look forward to our further negotiations on this matter.

Hottel instructed Shores that he was not authorized to distribute the February 21, 1991 letter of his relationship with LINA to any third parties.[3] Despite this fact, Shores sent the letter to plaintiff followed by two other letters which were inconsistent as to whether insurance or reinsurance was being provided. The first letter, dated February 27, 1991, provided that effective March 1, 1991, the Shores Group Plan was "fully reinsured by CIGNA." The second February 28, 1991 letter provided that the Shores Group Health Plan was fully insured by CIGNA from "dollar one." At this time, Shores represented to plaintiff that he had an agency agreement with LINA and a fully insured plan backed by CIGNA, an affiliated company of LINA's.

On February 27, 1991, Ralph Madio presented the Shores Group Plan to his two clients who then enrolled in the plan. Shores subsequently received checks from the SCMA and SCMS groups for $100,000.00 which was deposited into the Shores Group account. After accepting the plan, plaintiff requested from Shores a copy of the insurance policy and the binder. However, these documents were never provided. No insurance or reinsurance coverage was ever issued by LINA or CIGNA to Shores due to Shores' failure to take the necessary steps to secure such coverage, including asking for or receiving written quotes, completing the application, and providing a binder deposit. Despite this fact, Shores attempted to accept Hottel's offer of reinsurance on March 13, 1991.

As the medical groups' claims were submitted, they were denied. On April 2, 1991, Hottel sent Shores a letter indicating his concern that Shores had misrepresented to Shores Group clients that CIGNA was fully reinsuring the Shores Plan. The April letter was clear that CIGNA's sole intent was to offer reinsurance. Thereafter, on April 19, 1991, Ralph Madio contacted Hottel and was informed by Hottel that CIGNA was not underwriting the plan. Ralph and Bob Madio sent a follow up letter confirming that CIGNA was not insuring the plan and requesting reconsideration.

On April 23, 1991, LINA sent Shores and Shores Group a "cease and desist" letter. On May 3, 1991, Shores informed all of the clients of the Shores Plan that they had no insurance, effective April 1, 1991.[4]

## II.  DEFENDANT LINA'S MOTION FOR SUMMARY JUDGMENT

■ Defendant LINA moves for summary judgment on all counts for failure to raise any genuine issue of material fact. *See* Rule 12(b)(6), Fed.R.Civ.P. Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. Rule 56(c), Fed.R.Civ.P.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608–09 (11th Cir.1991). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995) (citations omitted).

---

**3.** Hottel was reprimanded for sending the February 21st letter because he acted outside of his authority. (Dkt. 124, p. 48).

**4.** Apparently, plaintiff, The Madio Group, Inc., is a defendant in a state court action brought by SCMS and SCMA.

The liability of defendant LINA is premised on the actions of defendant Shores. Plaintiff argues that Shores was acting as an agent for LINA when he made the alleged false statements and misrepresentations, and committed other tortious conduct. Therefore, before reaching the issue of defendant's summary judgment on plaintiff's substantive claims, this court must first determine whether genuine issues of material fact exist as to plaintiff's claim that Shores was acting as an agent for defendant LINA.

■ A principal is liable for the tortious acts of its agent which occur within the course and scope of the agent's employment. *See Taco Bell of Cal. v. Zappone*, 324 So.2d 121, 123 (Fla. 2d DCA 1975). Under Florida law, a principal may be liable under actual agency or apparent agency principles. *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 883 (11th Cir.1983).

Defendant LINA defines any authority of Shores solely in terms of reinsurance and argues that plaintiff was on notice that Shores' authority was limited to reinsurance. LINA acknowledges that there may be some dispute as to the scope of Shores' alleged agency relationship regarding reinsurance, but that there is no dispute Shores had no authority to bind LINA in the placement of any direct insurance product. Therefore, defendant concludes that none of Shores' alleged misrepresentations or other wrongful acts could have occurred in the course and scope of the alleged agency relationship with LINA. LINA argues that plaintiff knew of the unreliable nature of Shores' representations and should have known that Shores did not have the authority to bind LINA. Moreover, according to defendant, plaintiff was fully aware it could not rely upon Shores' letters to show the DOI that it had obtained a fully insured plan as required.

Plaintiff contends that the letters from Shores support its contention that it was reasonable for plaintiff to assume Shores was acting as an agent of LINA. Plaintiff relies upon the provision in the February 21, 1991 letter from Hottel to Shores which states, "CIGNA recognizes and has appointed J. Patrick Shores as a licensed Agent to write business for CIGNA." Plaintiff argues that there were no restrictions on the type of business which Shores was authorized to write. Plaintiff contends that the agency issues are jury questions.

■ Actual or express agency occurs when the principal specifically authorizes its agent to take certain actions. *See generally id.* at 885 (authority conferred in express terms). In this case, plaintiff has proffered no evidence that defendant LINA specifically authorized Shores to negotiate with plaintiff or provide full insurance to plaintiff to create such an agency relationship. Therefore, the next inquiry is whether there exists a genuine issue of material fact with regard to apparent agency.

■ Apparent agency arises "when the principal allows or causes others to believe that an individual has authority to conduct the act in question, inducing their detrimental reliance." *Borg–Warner Leasing v. Doyle Elec. Co., Inc.*, 733 F.2d 833, 836 (11th Cir.1984), *cert. denied*, 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986). The focus is on the appearances created by the principal, in this case LINA, and not the agent. *See Cavic*, 701 F.2d at 886; *Warren v. Department of Admin.*, 554 So.2d 568, 571 (Fla. 5th DCA 1989).

■ The principal, by its actions, must create a reasonable appearance of authority. "Under Florida case law, a question of agency is reserved to the trier of fact when resolution of the issue depends on the inferences to be drawn from the facts adduced." *Borg–Warner*, 733 F.2d at 836.

■ Plaintiff's agency theory rests exclusively on the February 21, 1991 letter from Hottel, a LINA field representative, to Shores. (Dkt. 131, Exh. 1). There exists no other correspondence from LINA or CIGNA to Shores and there is no evidence of any written correspondence or verbal conduct between plaintiff and LINA prior to plaintiff's discovery that the insurance claims were being rejected. (Dkt. 117, p. 76; Dkt. 119, p. 57, 166). The February 21, 1991 letter indicates CIGNA's willingness to fully reinsure Shores' health business and in the following paragraph, appoints Shores as a licensed

agent to write business for CIGNA. There is no dispute that the discussions between Shores and Hottel only concerned reinsurance. (Dkts. 122, p. 93; 124, p. 23). The letter was in response to Shores' request for reinsurance on a new company he planned to purchase—Southern United Life Insurance Company. The letter also indicates that the discussions between Hottel and Shores were still simply negotiations. Hottel directed Shores that he was not authorized to distribute the letter to any third parties or prospective clients. (Dkt. 124, p. 28).

Ralph Madio knew the difference between insurance and reinsurance. Ralph Madio had 18 years experience in negotiating reinsurance contracts. (Dkt. 117, p. 28–29). Ralph Madio realized that primary insurance must be in place before reinsurance can be obtained. Reinsurance can only provide protection to an insurer. (Dkt. 125, p. 56–57, 60). Ralph and Bob Madio state in their depositions that they relied upon Shores' statements that CIGNA would "fully reinsure the medical groups from dollar one." (Dkts. 117 and 119). However, this is not what Hottel represented in his letter.

However, plaintiff knew that the Hottel letter concerned potential reinsurance, not primary coverage. (Dkt. 117, Exh. 5). On February 20, 1991, Bob Madio met with Shores in Atlanta to discuss the Shores Group Plan. The next day, Bob Madio faxed a letter to Ralph Madio indicating that the plan was underwritten by the American Federal Insurance Company and was reinsured by American Federal. Bob Madio then noted:

> CIGNA is considering taking over American Federal's total book of business placed by the Shores Group and the Shores Group is attempting to use CIGNA as a reinsurer for their newly acquired life insurance company. This means that Shores wants to use the newly acquired life insurance company as a fronting company for his current health book reinsured by CIGNA rather than using CIGNA as their direct market.

(Dkt. 11, Exh. 5).

This letter renders frivolous plaintiff's argument that Hottel's letter to Shores, written the day after Shores and Bob Madio's meeting, could be interpreted as appointing Shores as agent to write primary full coverage given Bob Madio's acknowledgement of CIGNA's role as reinsurer.

Moreover, Shores never attempted to accept Hottel's offer of reinsurance until March 13, 1991, after plaintiff accepted and begun enrollment of its clients in the plan. It is uncontested that the discussions between Shores and Hottel never resulted in any type of coverage.

Viewing the evidence in the light most favorable to plaintiff, the alleged principal, LINA, did not by its actions or inactions, through Hottel, create a reasonable appearance that Shores had authority to bind it to provide primary insurance coverage, precisely what plaintiff needed. The letter authored by Hottel concerned only reinsurance. Moreover, the letter indicated that the relationship between LINA and Shores was still in the negotiations stage.

■ Because LINA's liability is based on agency theories, plaintiff must additionally show that the statements were made in the course and scope of the alleged agency relationship and that plaintiff reasonably relied upon evidence of that agency relationship. See Cavic, 701 F.2d at 883; Banco Nacional De La Vivienda v. Cooper, 680 F.2d 727, 730 (11th Cir.1982); C & J Sapp Publishing Co. v. Tandy Corp., 585 So.2d 290, 292 (Fla. 2d DCA 1991).

■ Based on the evidence presented, a reasonable jury could not return a verdict for plaintiff because any reliance by plaintiff upon Hottel's letter was unreasonable. See Haves, 52 F.3d at 921 (citing summary judgment standard). Ralph and Robert Madio were never provided with a policy or binder. Shores was promoting a Shores Group Plan, not a CIGNA plan. Hottel's letter was in response to oral discussions pertaining to reinsuring a particular company. It was not a commitment letter and it did not state that it would fully insure the medical groups. The Madios attempted to identify the primary carrier after February 21, 1991, the date of the Hottel letter. They also tried to confirm a CIGNA connection at least until

March 15, 1991. These facts demonstrate the Madios' doubts that CIGNA was fully insuring the plan. They admit that there are no documents in support of Shores agency relationship with CIGNA except Hottel's letter. (Dkt. 119. p. 140–41). In light of the record, any reliance upon a Shore/LINA agency relationship by plaintiff was unjustified and no reasonable jury could find otherwise. Therefore, summary judgment is appropriate.

This court acknowledges the Florida case law cited by plaintiff which states that issues of agency and the scope of an agency relationship are questions of fact. However, the Eleventh Circuit has held that agency is a question of fact only "when resolution of the issue depends on the inferences to be drawn from the facts adduced." *Borg–Warner,* 733 F.2d at 836. Here, the only inference to be drawn relates to whether Hottel's February 21, 1991 letter appointing Shores as its agent could be interpreted by the trier of fact as according Shores apparent authority to write primary insurance coverage for LINA. For the reasons previously stated, the only reasonable inference to be drawn from the letter is that Shores arguably could write reinsurance for CIGNA, not primary insurance, in the event Shores ever became a properly licensed agent. Because there are no genuine issues of fact in dispute concerning whether Shores had authority to act as LINA's agent for providing primary insurance, defendant's summary judgment motion on this ground must be granted.[5]

In conclusion, the evidence presented does not create a genuine issue of material fact concerning whether Shores had apparent authority to represent to plaintiff that LINA would issue primary insurance coverage for the group policies in question. Summary judgment is therefore proper.

Upon consideration, it is **ORDERED** that:

(1) Defendant Life Insurance Company of North America's (LINA) Motion for Summary Judgment (Dkt. 111) is GRANTED.

(2) The Clerk of Court is directed to enter judgment in favor of Life Insurance Company of North America (LINA) on all claims.

**DONE** and **ORDERED.**

---

5. Although it is unnecessary for the resolution of this motion, this court agrees with defendant LINA's reasoning and conclusions on the conversion and tortious interference claims.