**Elaine CAMPBELL, Plaintiff,**

v.

**Marie OSMOND, Louis Knickerbocker, Knickerbocker Creations, Ltd., Wal-Mart Stores, Inc., Defendants.**

No. 93–1162–CIV–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

March 4, 1996.

---

David Wilson Pettis, Jr., Pettis & McDonald, P.A., Tampa, FL, Alfred A. Mamlet, Steptoe & Johnson, Washington, DC, David Lee Partlow, David L. Partlow, P.A., Tampa, FL, for Elaine Campbell.

Donald Arthur Gifford, Shackleford, Farrior, Stallings & Evans, P.A., Tampa, FL, Gerald A. Margolis, Law office of Gerald A. Margolis, Beverly Hills, CA, for Marie Osmond, Louis Knickerbocker, Knickerbocker Creations, Ltd., Wal–Mart Stores, Inc.

### ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This action is before the court on the following motions and responses:

1. Defendants, Marie Osmond (hereafter "Osmond"), Louis Knickerbocker (hereafter "Knickerbocker"), Knickerbocker Creations, Ltd. (hereafter "Creations") and Wal–Mart Stores, Inc.'s (hereafter "Wal–Mart") motion for summary judgment, filed October 20, 1995. (Docket No. 39)

2. Defendants, Osmond, Knickerbocker, Creations and Wal–Mart's memorandum in support of the motion for summary judgment, filed October 20, 1995. (Docket No. 40)

3. Plaintiff, Elaine Campbell's (hereafter "Campbell") memorandum of law in opposition to Defendants' motion for summary judgment, filed November 20, 1995.[1] (Docket No. 44)

### Facts

Osmond and Knickerbocker on behalf of the toy company, Creations, entered into an arrangement to manufacture and market a line of dolls labeled the "I Can Dream" collection. This collection of dolls depicts children clothed as adults in a variety of settings including a rodeo queen, bride, cheerleader and teacher. Upon completion of production overseas, the line was to be primarily distributed through Wal–Mart stores. It is the sculpture of the heads of the dolls in this collection that are the subject of this dispute.

Campbell, the Plaintiff in this action, designs collectable doll head sculptures. From these sculptures, Campbell manufactures molds which she then sells to either commercial doll manufacturers or individuals at trade shows. Since August 11, 1991, Campbell has retained copyright Certificates of Registration on several doll head sculptures, two of which are at issue: "Dixie" and "Poppy". Campbell contends that an agent of Creations, Sue–Ling Washburn ("Washburn"), purchased molds of the Dixie and Poppy dolls from her at a trade show under the guise that they were not to be used for commercial reproduction. Campbell further asserts that these molds were then shipped overseas to facilitate the manufacture of Defendants' dolls for the "I Can Dream" collection.

Osmond contends that the sculpture of the heads for the dolls in the "I Can Dream" collection resulted from the synthesis of facial features used in a previous Osmond doll line and the features of a "reproduction face" within the public domain of the doll community known as a "pouty face" design. Osmond further asserts that her dolls are so sufficiently different in appearance that no infringement could have occurred.

Plaintiff filed suit claiming that Defendants are liable for fraudulent misrepresentation and breach of contract in that Defendants, through their agent, Washburn, represented that Campbell's doll molds would be used for a limited, non-commercial purpose. Moreover, Plaintiff alleges that Defendants are liable for Copyright infringement and violation of Section 43(a) of the Lanham Act arising out of Defendants' marketing of the "I Can Dream" line as an Osmond original doll collection. Defendants filed this motion

---

1. The Court notes that when filing the above referenced documents in this action, neither Defendants' nor Plaintiff's counsel complied with this Court's Order, dated August 19, 1993, which requires all parties to "submit copies of all cases cited in ... any memorandum of law, or motion filed...."

for summary judgment as to each of these claims.

### Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits if any show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Only when the moving party has sustained its initial burden of showing the court that there is no genuine issue of material fact, should a court, viewing all the evidence in the light most favorable to the non-moving party, grant a motion for summary judgment in the moving party's favor. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). Once the moving party has established the absence of a genuine issue of material fact, to which the non-moving party bears the burden at trial, "Rule 56(e) ... requires the nonmoving party to go beyond the pleadings ... and designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986). The non-moving party succeeds in establishing that the issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### Copyright Claim

Defendants first assert that there is no genuine issue of material fact as to Plaintiff's claim for Copyright infringement in that there is: 1) no direct evidence of copying by Defendants, 2) no evidence that Defendants had access to Plaintiff's molds, 3) no evidence of striking similarity between Plaintiff's and Defendants' dolls, and 4) that any similarity which does exist between the dolls is attributable to a common antecedent source, a doll mold within the public domain known as a "pouty face" doll design.

### Generic Design

■ This Court first addresses Defendants' last argument that Plaintiff's dolls are undeserving of copyright protection due to their generic design. In order to prove copyright infringement, a plaintiff must first establish ownership of a valid copyright in the work. *See Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1375 (5th Cir.1981). While copyright protection may extend only to those components of a work that are original to the author, a work is considered "original" and thus qualifies for copyright protection if the work "possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991). Although the Plaintiff in an infringement action bears the initial burden of persuasion as to the validity of the copyright, "once [she] produces a copyright certificate, [she] establishes a *prima facie* case of the validity of the copyright and the burden shifts to the defendant to introduce evidence of invalidity." *Original Appalachian Artworks, Inc. v. Toy Loft*, 684 F.2d 821, 826 (11th Cir.1982). In the absence of evidence to the contrary, certificates of registration establish a party's right to sue for copyright infringement. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir.1980).

■ In the present case, Plaintiff has provided copyright certificates for each doll at issue, thus establishing a *prima facie* case of validity. The burden has, therefore, shifted to the Defendants to rebut this *prima facie* evidence. In response, Defendants have provided the court with photocopies of the "pouty face" design and have asserted that in a side by side comparison, the similarities between the Plaintiff's dolls and Defendants' dolls are due to the fact that Plaintiff's dolls were based on an uncopyrightable design, the "pouty face" design.

Even if this factual inquiry were appropriate in a motion for summary judgment, *see Warner Brothers v. American Broadcasting Co.*, 720 F.2d 231, 239 (2d Cir.1983) (noting that issues of substantial similarity are fact issues generally left for jury resolution), the photocopies provided by Defendants lack the

degree of definition and clarity necessary to discern any common facial elements between the Plaintiff's dolls and the generic design. Based on the record before the Court, it cannot be said that Plaintiff's dolls fail to possess the minimal degree of creativity necessary to be considered original and thus, are undeserving of copyright protection. Moreover assuming that Plaintiff's dolls possess some minimal degree of originality, in looking at the photocopies it cannot be determined with any accuracy which, if any, of the doll's facial features are duplicative of the pouty face design and thus undeserving of copyright protection. *See Feist Publications*, 499 U.S. at 348, 111 S.Ct. at 1289, 113 L.Ed.2d at 371 (noting that "copyright protection may only extend to those components of a work which are original to the author"). Therefore, in the absence of evidence sufficient to cast doubt on the issue of validity, the Court presumes, for the present, that Plaintiff's copyrights are valid notwithstanding Defendants' assertions that they originate from a generic antecedent mold. *See Durham Industries Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980).[2]

### Direct Copying

■ In addition to establishing a valid copyright, the plaintiff must show copying by the defendant. *See Miller*, 650 F.2d at 1375. However, Campbell's failure to provide evidence sufficient to establish copying directly

is not detrimental to her claim. "Because it is rarely possible for an author to prove copying directly, courts have developed a two-part test that infringement plaintiffs can use to prove copying indirectly. This test requires the plaintiff to show that: 1) the defendant had access to the work, and 2) that the defendant's work is substantially similar to the plaintiff's." *Toy Loft*, 684 F.2d at 829 (citing *Miller v. Universal City Studios*, 650 F.2d 1365 (5th Cir.1981)).

### Access

■ As to the first element of this test, "access", courts have found the access requirement satisfied where the defendant has had the opportunity to view the copyrighted work. *See e.g., Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir.1978). Therefore, it is sufficient that a plaintiff show that "a third party, with whom both the plaintiff and defendant were dealing, had possession of the plaintiff's work." *Arthur Rutenberg Corp. v. Parrino*, 664 F.Supp. 479, 481 (M.D.Fla.1987) (quoting *Kamar International, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir.1981)).

■ For purposes of defeating summary judgment, Campbell has sufficiently established that Defendants had access to Plaintiff's doll molds. Campbell has set forth in a sworn statement[3] that she sold "Dixie" and

**2.** Oddly, in the brief in support of Defendants' motion for summary judgment, Defendants state that "[f]or the purposes of this motion ... [they] do not challenge the validity of Plaintiff's copyrights in 'Poppy' and 'Dixie.'" Brief in Support at 3 n. 2. Notwithstanding this temporary concession, Defendants then assert in the accompanying motion that because there is a common antecedent origin for the design of the dolls, a source which is within the public domain, "Plaintiff is not entitled to Copyright protection...." Because this Court finds that Defendants have failed to provide competent evidence to rebut Plaintiff's *prima facie* case as to the validity of her copyrights, this Court need not decide whether Defendants' concession in their brief as to the validity of Plaintiff's copyrights should be interpreted so as to remove from the Court's consideration the merits of Defendants' allegations which appear in their motion that the doll heads are not copyrightable material.

**3.** The Court notes that none of the sworn statements provided by Plaintiff in response to Defen-

dants' motion for summary judgment satisfy the technical requirements of an affidavit since they were not sworn to before a notary nor do they contain appropriate jurats. However, in the absence of a timely objection by Defendants, this Court has looked past the technical insufficiencies to the substance of the assertions contained within these statements. *See Auto Drive–Away Co. v. Interstate Commerce Comm.*, 360 F.2d 446, 448–49 (5th Cir.1966) (finding that an affidavit which "does not measure up to the standards of Rule 56(e) is subject to a motion to strike, [and] in the absence of ... this objection, formal defects in the affidavit are waived"); *Noblett v. General Electric Credit Corp.*, 400 F.2d 442, 445 (10th Cir.) (citing 6 Moore's Federal Practice § 56.22(1)), *cert. denied*, 393 U.S. 935, 89 S.Ct. 295, 21 L.Ed.2d 271 (1968); *Burnett v. Stagner Hotel Courts, Inc.*, 821 F.Supp. 678 n. 2 (N.D.Ga. 1993) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, § 2722), *aff'd*, 42 F.3d 645 (11th Cir.1994).

"Poppy" doll molds to Washburn at a trade show in April of 1992 and that at that time, Washburn represented that she worked with Osmond. In addition, Nancy Cordaro, a sourcing agent for Knickerbocker, gave deposition testimony that she knew Washburn to have worked with Knickerbocker as "one of [Knickerbocker's] suppliers." Thus, Washburn, who had possession of Campbell's molds, provides the "access" element since she is a third party with whom both Campbell and Defendants had dealings.

### Substantial Similarity

Turning to the "substantial similarity" element of the indirect copying test, " 'substantial similarity' exists where 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.' " *Toy Loft*, 684 F.2d at 829 (quoting *Durham Industries*, 630 F.2d at 911). Ordinarily, issues of substantial similarity are fact issues left for jury resolution. *Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679 F.Supp. 1564, 1574 (N.D.Ga.1987); *see Warner Brothers v. American Broadcasting Companies*, 720 F.2d 231, 239 (2d Cir.1983). Defendants, however, urge the Court to apply the exception to this general proposition and engage in a visual comparison to determine the substantial similarity issue. The exception to the general proposition provides that a court may grant summary judgment on the issue of substantial similarity if "the similarity between two works concerns only 'non-copyrightable' elements of the plaintiff's work or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Warner Brothers*, 720 F.2d at 240; *see Schlaifer Nance*, 679 F.Supp. at 1574.

As already indicated, the evidence before the court regarding the alleged noncopyrightable aspects of Plaintiff's dolls is insufficient to presently deny copyright protection to Plaintiff's creations. With respect to substantial similarity, Defendants urge the court to follow the lead taken by the Second Circuit in *Warner Brothers* and the *Schlaifer Nance* court in this circuit and conduct a side-by-side comparison. Defendants assert that a visual comparison in the instant case between the Plaintiff's and Defendants' dolls leads to the inexorable conclusion that "no reasonable jury" would find the works substantially similar. However, the facts of the *Warner Brothers* and *Schlaifer Nance* paint a far clearer picture of the absence of substantial similarity than exists in the instant case.

In *Warner Brothers*, the court determined as a matter of law that the main character, Ralph Hinkley, of the television program, "The Greatest American Hero" was insufficiently similar to the fictional character Superman to allow claims of copyright infringement and unfair competition to be decided by a jury. 720 F.2d at 235. The court found that the character of Ralph Hinkley was "a timid reluctant hero, who accepts his missions grudgingly, . . . is perplexed by the powers that his costume confers and uses them in a bumbling comical fashion." *Id.* at 243. Conversely, the court found that the Superman character was "a brave, proud hero who . . . performs his superhuman feats with skill, verve and dash." Looking at the "overall perception" of the characters, the *Warner Brothers* court concluded that the Hinkley character's looks, acts and demeanor marked him as a non-infringing character.

Similarly in *Schlaifer Nance*, the court determined whether the "Furskins Bears" lacked sufficient similarity to the "Cabbage Patch Kids" to deny the issue from being presented before a jury. 679 F.Supp. at 1574. In distinguishing the two works the court noted, among other characteristics, that the "Furskins Bears" were "stocky, animal-like figures covered predominantly with thick fur" that had large muzzles, protruding bellies and stout tails. *Id.* at 1574–75. Conversely, the court found that the "Cabbage Patch Kids" had bodies produced entirely from fabric to produce a flesh appearance. In addition the *Schlaifer Nance* court noted that the faces were created "to exhibit child like features" with small noses and mouths and no chins. Notwithstanding the similarities in packaging, the court concluded that "it could not hold that the similarities between the Furskins Bears and Cabbage Patch Kids

were substantial enough to constitute a copyright violation." *Id.* at 1575.

In the present case, Defendants go to great lengths to describe the differences between Plaintiff's dolls, "Poppy" and "Dixie" and Defendants' "I Can Dream" doll collection. With the aid of a chart, Defendants point to detailed variances between the works such as fuller lips, less pronounced chins, slightly pooched cheeks, and rounder eyes. In contrast, Plaintiff has provided the court with a report, prepared by an individual Plaintiff labels an industry expert, which notes: "same sculpting" of the heads; identically proportional noses, mouths and ears; identical "subtle lines" from the corner of the mouth to the chin which slope more on the same side of each head; identical ear shapes; and identical "subtle line contours" on the left ear of each doll's head. This report concludes that the "Osmond vinyl heads ... are direct copies of ... Campbell's heads, Dixie and Poppy." Viewing the forgoing evidence in a light most favorable to Campbell would appear to dispose of Defendants' motion with respect to substantial similarity. However, relying on these contradictory analytical dissections alone to decide the issue of substantial similarity would be improper.

The question here, like *Warner Brothers* and *Schlaifer Nance,* is "whether the lack of substantial similarity is so clear as to fall outside the range of reasonably disputed fact." 720 F.2d at 239. However, relying on the pointed observations contained in Plaintiff's report and Defendants' chart, which amount to "minute, meticulous, analytical dissection[s]" of the works, to conduct a side-by-side comparison is inappropriate when deciding the issue of substantial similarity in a motion for summary judgment. *See Sid & Marty Krofft Television v. McDonald's Corp.,* 562 F.2d 1157 (9th Cir.1977). To the contrary, a graphic or three dimensional work, such as the sculpture of a doll's head, is created to be perceived as an entirety. *Warner Brothers,* 720 F.2d at 241. Rather than subject the doll head sculptures to such hypercritical scrutiny, the comparison should attempt to predict the probable reaction of an average lay observer to the overall aesthetic appeal of the copyrighted work. *Design-*

*er's View, Inc. v. Publix Super Markets, Inc.,* 764 F.Supp. 1473, 1478 (S.D.Fla.1991) (citing *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 829 (11th Cir.1982)); *see Durham,* 630 F.2d at 910.

■■ Based on the color photographs of the dolls provided by Defendants, it is the Court's conclusion that when viewing the dolls' heads as a whole, sufficient similarity exists between Campbell's works and Defendants' line to present an issue of material fact that is more appropriately decided by a trier of fact. Moreover, the fact that Knickerbocker's manufacturing process produced dolls in vinyl form, rather than the porcelain used by Plaintiff, a point of distinction emphasized by Defendant, is of no consequence in this case. The medium used to reproduce the dolls in question has no bearing on the issue of whether the Defendants' works infringed on Campbell's creations. *See Durham,* 630 F.2d at 910.

### Lanham Act Claim

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1) provides that "any person who, on or in connection with any goods ... uses ... any false designation of origin ... which is likely to cause confusion, or to cause mistake ... as to origin ... of his or her goods ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." The essential element of a Lanham Act claim is proof that "the alleged infringement by the defendant creates a likelihood of confusion on the part of consumers as to the source of the goods." *Original Appalachian Artworks, Inc. v. Toy Loft,* 684 F.2d 821, 831 (11th Cir.1982).

■■ Defendants contend that they are entitled to summary judgment on the Lanham Act claim since this claim is predicated on the validity of the copyright infringement claim in that should the Court conclude there is an absence of substantial similarity, Plaintiff cannot recover under the Lanham Act for the damages caused by consumer confusion. Several courts have found that once a court determines that no substantial similarity exists with respect to a copyright claim there can be no recovery under the Lanham Act

since there is no issue concerning the likelihood of customer confusion. *See Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 121 (8th Cir.1987); *Berkic v. Crichton*, 761 F.2d 1289, 1291 n. 1 (9th Cir.), *cert. denied*, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 69 (1985); *Warner Brothers, Inc. v. American Broadcasting Co.*, 720 F.2d 231, 247 (2d Cir.1983); *Durham Industries Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir.1980). The corollary to this premise is that where an issue of fact remains as to the substantial similarity between works of different authors which are sold to the public, there exists an issue with regard to whether consumers were confused as to the authorship of the works. Since this court has determined that a material issue of fact remains regarding the substantial similarity between Plaintiff's and Defendants' dolls, consumer confusion as to the author of the "I Can Dream" collection may also exist.[4]

■ Alternatively, Defendants assert that Plaintiff's Lanham Act claim is "subsumed" by the copyright claim so that even if Plaintiff establishes substantial similarity, copyright laws provide the only appropriate remedy absent a finding of a bodily appropriation by Defendants of Plaintiff's dolls. Defendants rely principally on *Shaw v. Lindheim*, 908 F.2d 531 (9th Cir.1990).

In *Shaw*, the author of a television pilot script entitled "The Equalizer" brought an action against a former fellow writer, Lindheim, for copyright infringement and violation of the Lanham Act. *Id.* at 533. When NBC declined to produce the show, Lindheim left to work for CBS. Shortly thereafter, Lindheim wrote a television series "treatment" entitled "The Equalizer." *Id.* Although the *Shaw* court found sufficient evidence indicating substantial similarity to support the author's claim for copyright infringement, it declined to find the issue of substantial similarity sufficient to support a Lanham Act claim. The *Shaw* court stated:

We are reluctant to expand the scope of § 43(a) to cover the situation presented here. [Plaintiff's] claim is not consistent with the Lanham Act's purpose of preventing individuals from misleading the public by placing their competitor's work forward as their own. In spite of the similarities ... the likelihood that the two [scripts] will be confused is minimal. We decline to expand the scope of the Lanham Act to cover cases in which the Federal Copyright Act provides an adequate remedy.

*Id.* at 542.

This Court is unaware of any other circuit following the *Shaw* rationale. Moreover, the Second Circuit, in *Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775, 784 (2d Cir.1994), has criticized the *Shaw* holding. In *Waldman*, a publisher of children's books brought action against a competitor for copyright infringement and violations of the Lanham Act. The children's books alleged to have been copied by the defendants were adaptations of classic literature. Although the Waldman court found that the defendant's books were not "exact copies", it nonetheless concluded that sufficient similarities between the works existed which substantiated a claim for copyright infringement.

As to the Lanham Act claim, the *Waldman* court criticized the Ninth Circuit's decision in *Shaw* for its restrictive "bright-line rule" which requires proof of bodily appropriation of the original source before allowing the issue of consumer confusion to go forward. *Id.* at 784. Rather, the *Waldman* court found that just as a bodily appropriation could lead to consumer confusion as to the actual authorship of the good, so too could a defendant's production of a work which is "substantially similar" to the plaintiff's. Thus, the court concluded that substantial similarity fell within the parameters of the statutory language of § 43(a) which prohibits a "false designation of origin." *See id.* at 781, 784; *see also Arrow United Industries,*

---

4. The court notes that disallowing a plaintiff to go forward on a copyright claim will not foreclose the possibility of recovery for unfair trade practices in every instance. *See International News Service v. Associated Press*, 248 U.S. 215, 234–35, 39 S.Ct. 68, 71, 63 L.Ed. 211 (1918) (finding news items inappropriate subjects for copyright protection, but allowing for a claim of unfair competition); *Debs v. Meliopoulos*, 1993 WL 566011 (N.D.Ga.1991) (finding that loss of a copyright claim is not dispositive of unfair competition claims under the Lanham Act), *aff'd*, 986 F.2d 507 (11th Cir.1993).

*Inc. v. Hugh Richards, Inc.*, 678 F.2d 410 (2d Cir.1982) (finding that plaintiff's § 43(a) claim had merit where plaintiff alleged that defendant, an air flow equipment manufacturer, merely reproduced plaintiff's product in a smaller size); *Debs v. Meliopoulos*, 1993 WL 566011, *12 (N.D.Ga.1991) (rejecting *Shaw* and failing to find any requirement in Section 43(a) that the plaintiff establish bodily appropriation), *aff'd*, 986 F.2d 507 (11th Cir.1993). Based on the foregoing, this Court finds the rationale in *Waldman* more persuasive than *Shaw*, and therefore, decides that bodily appropriation is not a prerequisite to Plaintiff's proceeding on a claim under § 43(a).

■■■ In addition, this Court notes that a Lanham Act claim is subsumed by copyright law only in so far as it attempts to protect against copying or is a claim based on a right equivalent to the exclusive rights within the scope of the copyright. *Durham*, 630 F.2d at 918–19 (quoting 17 U.S.C. § 301(a)). Damages caused as the result of consumer confusion, however, give rise to a separate cause of action. *See Waldman*, 43 F.3d at 781 (finding that a Lanham Act claim is separate and distinct from a claim of copyright infringement); *Playboy Enterprises, Inc. v. Frena*, 839 F.Supp. 1552 (M.D.Fla. 1993) (granting summary judgment in favor of the plaintiff on claims for violations of both copyright law and the Lanham Act where defendant's textual modification of plaintiff's photographs did not convert the work to something different in kind from the original). Therefore, providing that Campbell succeeds on the merits of her assertion of substantial similarity, her claim for violation of the Lanham Act is not subsumed to the extent that she seeks redress for the damages attributable to consumer confusion regarding authorship of the "I Can Dream" collection.

### Claims for Common Law Fraud and Breach of Contract

Finally, Defendants advance that no genuine issue of material fact exists as to status of Washburn as Defendants' agent, upon which both Plaintiff's breach of contract and fraudulent misrepresentation claims depend.

Defendants assert that no such agency relationship existed at the time that Washburn purchased the "Dixie" and "Poppy" doll molds from Campbell.

■■■ When a party bearing the burden of proving agency fails to produce evidence in support of its allegations or where the evidence presented by both parties is so unequivocal that reasonable persons could reach but one conclusion, a court may determine the lack of agency as a matter of law. *Eberhardy v. General Motors Corp.*, 404 F.Supp. 826, 830 (M.D.Fla.1975). However, the question of agency is reserved to the trier of fact when resolution of the issue depends on inferences to be drawn from the facts adduced. *Borg–Warner Leasing v. Doyle Electric Co.*, 733 F.2d 833, 836 (11th Cir.1984), *cert. denied*, 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986). Moreover, in Florida, actual authority is not necessarily a precondition to establishing the agency relationship since, under the doctrine of apparent authority, agency will arise when the principal causes or allows others to believe that the individual has authority to act on the principal's behalf. *Id.* at 836.

■■■ In the instant case, Plaintiff has provided a sworn statement indicating that Washburn represented that she worked for Osmond when she purchased the dolls from Plaintiff. In addition, Campbell points to the independent deposition testimony of one of Creation's sourcing agents, Cordaro. In response to the question—what was Sue Ling Washburn doing for Mr. Knickerbocker—Cordaro stated that "[Washburn] was basically providing the same kind of sourcing service." Cordaro Depo. at 7. In other words, Cordaro was under the impression, based on her dealings with Creations, that Washburn was acting as a sourcing agent as well. Finally, Plaintiff has submitted a letter from Washburn, the authenticity of which has not been controverted, in which Washburn threatens Campbell with legal action if she loses her "job at Knickerbocker." When viewed in a light most favorable to Campbell, this evidence establishes at a minimum, that Creations caused or allowed others to believe that Washburn was an authorized agent if not directly establishing actual authority as

Defendants' agent. Therefore, summary judgment in favor of Defendants as to Plaintiff's breach of contract and common law fraud claims is inappropriate.

 As to the last issue regarding the affirmative defense of independent creation, contrary to Defendants' assertion this affirmative defense is not unrefuted since evidence viewed in a light most favorable to Plaintiff shows that Defendants' works contain identical sculptural flaws to the Plaintiff's works. Since production of Plaintiff's works pre-date Defendants' doll collection, material issues of fact remain as to Defendants allegations of independent creation making summary judgment on this basis inappropriate. Accordingly, it is

**ORDERED** that Defendants, Marie Osmond, Louis Knickerbocker, Knickerbocker Creations, Ltd. and Wal–Mart Stores, Inc.'s motion for summary judgment (Docket No. 39) be **DENIED.**

**DONE AND ORDERED.**