**Guillermo Antonio PARDO, et al., Plaintiffs,**

v.

**TANNING RESEARCH LABORATORIES, INC., Defendant.**

**No. 96–19–CIV–ORL–3ABF(22).**

United States District Court, M.D. Florida, Orlando Division.

March 10, 1998.

Pedro J. Martinez–Fraga, Hilarie Bass, Gustavo J. Lamelas, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, FL, for plaintiffs.

Paul Robert Regensdorf, Dan S. Arnold, III, Fleming, O'Bryan & Fleming, P.A., Ft. Lauderdale, FL, for defendant.

## MEMORANDUM OPINION AND ORDER

BAKER, United States Magistrate Judge.

This cause comes before the Court for consideration of the motion by Defendant, Tanning Research Laboratories, Inc. (herein "TRL") for summary judgment. The Court[1] has reviewed the briefs and record, and the extensive evidence[2] submitted by the parties (Doc. Nos. 88–103, 107, 112–120, 122, and 123). For the reasons set forth herein, the motion is **GRANTED.**

### Factual Background

Plaintiffs Guillermo Pardo, Nicolas Winegardner, and their company Boston Do Brasil, Ltd. (herein "Boston"), have sued TRL for alleged fraud and negligent misrepresentations arising out of Boston's attempt to distribute "Hawaiian Tropic" tanning and cosmetic products in Brazil. The remaining counts of the Amended Complaint[3] allege

---

**1.** The parties have consented to proceed before the United States Magistrate Judge pursuant to Title 28, United States Code, Section 636(c).

**2.** Some of the exhibits relied upon by the parties are in Portugese. When provided, the Court relied upon the translations submitted. When translations were not provided, the Court could not review the document. It is, of course, incumbent on the party introducing the evidence to provide a comprehensible copy.

**3.** By prior Order, the District Court dismissed Count III, alleging breach of fiduciary duty and Count IV, alleging tortious interference with contractual relations (Doc. No. 40).

that TRL, through its agents Bedinsol, S.A. and Data Lab, S.R.L., made negligent misrepresentations and fraudulently induced Plaintiffs to enter into an agreement to sell Hawaiian Tropic products in Brazil, even though they knew that such products could not be sold in Brazil, due to a pre-existing registration by a competitor of a similar brand name. The undisputed facts of record show that TRL had been prevented from registering its trade name "Hawaiian Tropic" in Brazil due to the pre-existing registration of the brand name "Haway" by Schering Plough Healthcare Products, Inc., the manufacturer of "Coppertone" tanning products. Prior to 1990, Brazilian courts had determined that TRL did not own the trade name "Hawaiian Tropic" in Brazil and that any distribution in Brazil of lotions so labeled would constitute an illegal infringement of the "Haway" trade name (see Amended Complaint, Exhibit D and E).

Bedinsol is a Uruguayan entity controlled by Marcel Pfeffer (Winegardner Deposition at 392 [Doc. No. 94]). Data Lab is a company owned by Juan Ignacio Edwards (Id. at 390). On January 26, 1993, Bedinsol entered into an agreement in which it granted to Data Lab the exclusive distribution rights of Hawaiian Tropic tanning products for Brazil (Exhibit A to Amended Complaint). Data Lab, in early 1993,[4] entered into a distribution agreement with Boston, which purported to grant Boston the exclusive right to resell and distribute Hawaiian Tropic products, within the territory of Brazil (Deposition Exhibit No. 33). There is no document in the record in which TRL purports to grant exclusive distribution rights for Brazil to Bedinsol or Marcel Pfeffer. TRL avers, through its International Marketing Director, Patrick Lewis, that there was never an agreement authorizing Pfeffer or Bedinsol to distribute Hawaiian Tropic products in Brazil or to enter into agreements with anyone else to do so (Lewis Affidavit, attached to Doc. No. 87). Likewise, TRL avers that it never had an agreement with Data Lab authorizing it to distribute Hawaiian Tropic products in Brazil or to enter into agreements to distribute Hawaiian Tropic products in Brazil. (Id.)

According to Lewis (and not contradicted by Plaintiffs), TRL did have written distribution agreements with Marcel Pfeffer whereby he became an independent distributor of Hawaiian Tropic products for certain countries in South America, not including Brazil. (Id.) [5] Further, in 1992, TRL "authorized Marcel Pfeffer to proceed with the Brazilian administrative agencies in an attempt to resolve the trademark problems in Brazil in a legal manner" (Lewis Affidavit at paragraph 8, see also Deposition Exhibits No. 9 and 10). In connection with this agreement, TRL avers that it "agreed in the future to grant Marcel Pfeffer a distributorship agreement for Brazil, but only in the event Pfeffer was successful in resolving the trademark problems in Brazil favorably to TRL." (Id.) [6]

Plaintiff alleges that TRL, through its agents Bedinsol and Data Lab, misrepresented to Plaintiffs that TRL owned the right to use "Hawaiian Tropic" name in Brazil. Plaintiffs contend that they relied on that misrepresentation, and began to distribute Hawaiian Tropic products in Brazil. The record reflects that Boston received, in Brazil, shipments of the products (Deposition Exhibits No. 191 and 192).[7] Some of these products were seized, on or about December 6, 1993, on a complaint filed by Schering Plough. Schering Plough also initiated civil and criminal actions against Plaintiffs in Bra-

---

4. The agreement itself is undated.

5. While Plaintiffs characterize Pfeffer's status as an agent with apparent authority, they do not contest that no written contract exists in which TRL purports to grant Pfeffer or his company rights to distribute product in Brazil.

6. The evidence indicates that, in fact, TRL was negotiating with other potential distributors, including Elite Modeling, for Brazil (Deposition Ex. 46, 59).

7. Although the parties dispute whether or not the shipments were sent directly by TRL to Plaintiffs or whether TRL had knowledge that certain shipments were being diverted to Brazil (see Deposition Exhibits No. 70), this dispute is not material to the disposition of this motion. The claims allege fraudulent and negligent *inducement* to enter into the distributor contract. The fact that product may have been ordered and shipped (properly or improperly) to Brazil well after the contract was executed is not evidence that Defendant induced anything.

zil. Plaintiffs claimed that they, individually, suffered damages as a result of the monies, time and effort they invested in the project, as well as the damages suffered due to the seizure and subsequent civil and criminal actions.

TRL, for its part, claims it had no knowledge, prior to December 6, 1993, of the contract between Boston and Data Lab, and Lewis swears (without contradiction) that he did not have any communication with Plaintiffs whatsoever prior to that date. (*Id.*)

### Summary Judgment Standard

A party is entitled to judgment as a matter of law when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. Pro. 56(c). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

### Analysis

Although Defendant raises several issues in its motion, the Court finds the lack of proof regarding agency to be dispositive.

Plaintiffs sue in tort, not contract, for misrepresentations allegedly attributable to TRL. There is no evidence that TRL *directly* made any representations to any of the Plaintiffs. Thus, Plaintiffs must prove vicarious liability, by showing actual agency or that Data Lab and Bedinsol (through Marcel Pfeffer) had apparent authority sufficient to characterize their status as "agents" of the principal, TRL.

Specifically, Plaintiffs rely on 1) representations made by Data Lab in the Boston distributor agreement that Data Lab had the consent of TRL to grant the exclusive right to sell its products in Brazil (*see* Deposition Exhibit 33); 2) representations made by a notary public in a "certificate of representation" that Bedinsol had exclusive rights to market the products in Brazil (Deposition Exhibit 35); 3) TRL's knowledge of Pfeffer's activities to develop the market in Brazil; 4) the use of "Hawaiian Tropic" letterhead by Marcel Pfeffer; 5) Boston's receipt of product in Brazil; and 6) Boston's "open and notorious" use of "Hawaiian Tropic" promotional materials and products. Plaintiffs also argue that the existence of an agency is a fact question, best left to the jury.

■ While Plaintiffs are correct that the existence of an agency relationship is generally a fact question, when a party bearing the burden of proving agency fails to produce evidence in support of its allegations or where the evidence presented is so unequivocal that reasonable persons could reach but one conclusion, a court may determine the lack of agency as a matter of law. *Campbell v. Osmond*, 917 F.Supp. 1574, 1583 (M.D.Fla. 1996), *applying Borg–Warner Leasing v. Doyle Electric Co.*, 733 F.2d 833, 836 (11th Cir.1984), *cert. denied*, 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986) (when inferences could be drawn from facts adduced, fact question exists.)

■ Under Florida law,[8] actual agency occurs when the principal specifically authorizes its agent to take certain actions. *Cavic v. Grand Bahama Dev. Co., Ltd.* 701 F.2d 879, 885 (11th Cir.1983). There is no genuine issue present regarding Pfeffer's, Bedinsol and Data Lab's lack of actual authority to enter into contracts or make representations to Plaintiffs on TRL's behalf. No such authority is alleged.

■ Under the doctrine of apparent authority, agency will arise when the principal

---

**8.** The parties have briefed the issues under Florida law. The Court thus assumes, absent contrary suggestion from either party, that Florida law controls this diversity action.

causes or allows others to believe that the individual has authority to conduct the act in question on the principal's behalf. *Borg–Warner,* 733 F.2d at 836. The focus is on the appearance created by the *principal,* and not the appearance created by the *agent. Madio Group, Inc. v. Shores,* 897 F.Supp. 1408, 1411 (M.D.Fla.1995) (*citing Cavic, supra,* 701 F.2d at 886), *affirmed on other grounds,* 105 F.3d 597 (11th Cir.1997); *accord Spence, Payne, Masington v. Philip M. Gerson,* 483 So.2d 775 (Fla. 3rd DCA 1986) (collecting cases). Applied here, there is no evidence to support Plaintiffs' claims against *this* Defendant.

■ The evidence cited by Plaintiffs, when viewed in its best light with all inferences in Plaintiffs' favor, establishes only that TRL was actively pursuing the opening of the Brazilian market. It does not constitute proof that TRL even gave the impression that anyone was authorized to begin distribution in Brazil or to empower others to do so.

The representations made by Bedinsol and the notary public in the agreements are not representations made by TRL, nor is there evidence to show that such representations were made with its knowledge or consent. In fact, the Distributor agreement with Boston specifically references a trademark licensing agreement, which was never supplied by TRL. While the record shows that TRL had knowledge of some of Pfeffer's activities in Brazil, there is no evidence to indicate that TRL had knowledge that Pfeffer was granting to others what he did not yet have himself—exclusive rights to distribute the products in Brazil. Plaintiffs admit that there was no contact with TRL at the time the "inducements" were allegedly made. The shipment of products and use of promotional materials all occurred well after the contract was formed. Subsequent actions by the principal may be sufficient to ratify a contract entered into by an agent with apparent authority, but this is not an action for breach of contract. Subsequent conduct of this character by the principal is not evidence to show that *at the time the representations were allegedly made,* the principal caused

others to believe that the individual had authority to act on his behalf.

The only evidence that TRL acted in such a way is Pfeffer's use of letterhead and promotional materials bearing the "Hawaiian Tropic" trademark. This is evidence of *some* authority, consistent with the pre-existing relationship between TRL and Pfeffer's company. This is not, however, sufficient to charge TRL with liability for Pfeffer's alleged tortious actions. There is no evidence that TRL knew that Pfeffer was using its trademark for purposes unrelated to the pre-existing relationship and Pfeffer was not purporting to act on behalf of TRL, as opposed to his own company, Bedinsol.[9] Significantly, Pfeffer did not enter into any agreements on behalf of TRL-the agreements were between Pfeffer's company and Data Lab. Any impression that Plaintiffs may have had that Pfeffer was authorized to negotiate a contract on behalf of TRL was the result of Pfeffer's actions, not TRL's.

Plaintiffs are sophisticated businessmen who undertook this contract with professional advice. This is not a case of a casual reliance on a corporate employee who exceeded the bounds of his corporate authority. These plaintiffs knew they were not dealing with TRL or any employee of TRL. If, in deciding to go forward with this business venture, they relied on the (stated or unstated) representations of TRL, they had some obligation timely to inquire of TRL or at least make TRL itself aware of the reliance. Plaintiffs have not provided sufficient evidence to create a genuine issue that the letterhead of one company was sufficient to induce Plaintiffs to think it had the approval and support of another company to enter into a contract with yet another company.

Additionally, Plaintiffs must show that the statements were made in the course and the scope of the agency relationship and that Plaintiffs reasonably relied upon evidence of that agency relationship. *Madio Group,* 897 F.Supp. at 1412 (*internal citations omitted*). As a matter of law, any reliance on Bedinsol or Pfeffer's representations that "Hawaiian Tropic" products could be sold in Brazil and

---

9. The letterhead does not mention "Tanning Research Laboratories, Inc." but is that of "Hawaiian Tropic Latina Bedinsol, S.A." (*See* Deposition Exhibit No. 26).

that they had authority to distribute TRL's products there, was unreasonable. This was an arms length negotiation between sophisticated business people. There is no fiduciary relationship present.[10] In an arms length transaction, under Florida law, there is no duty to act for the benefit or protection of the other party. *Cripe v. Atlantic First National Bank,* 422 So.2d 820 (Fla.1982). There is no evidence that TRL, or anyone else, prevented Plaintiffs from investigating the feasibility of the proposal or the legitimacy or extent of any claimed authority to sell the products.[11] Absent any duty, blind faith reliance was unwarranted.

This is not to say that Plaintiffs were not harmed by their ill-fated foray into the "Hawaiian Tropic" quagmire in Brazil. However, Plaintiffs have not shown that *this* Defendant is liable in tort for the consequences of Plaintiffs' actions.[12]

### Conclusion

The evidence presented does not show a genuine issue of material fact concerning whether Pfeffer or Bendisol or Data Lab had apparent authority to make representations on TRL's behalf with respect to negotiating a contract to sell TRL's products in Brazil. Summary judgment is therefore proper. It is **ORDERED** that:

1. Defendant's motion for summary judgment (Doc. No. 87) is **GRANTED.**

2. The Clerk of Court is directed to enter judgment in favor of Defendant Tanning Research Laboratories, Inc. on all claims and awarding Defendant its costs.

3. Because of this disposition, the Court need not reach Defendant's other arguments. Additionally, all other pending motions are **DENIED** as **MOOT.**

---

10. *See* the District Court's opinion dismissing the count for breach of a fiduciary relationship. (Doc. No. 40).

11. There is, in fact, some evidence that Plaintiffs knew that they could not distribute the products until the trademark situation was remedied. Deposition Exhibit 74. As this letter is dated subsequent to the relevant dates, it is not evidence of what Plaintiffs knew at the time the representations were allegedly made.

12. The Court makes no finding regarding the evidence of the less than straight-forward business practices of all concerned.