Michael GARDNER, an individual, and Bien Licensing Agency, Inc., a California Corporation, Plaintiffs,

v.

NIKE, INC., an Oregon corporation, and Sony Music Entertainment, Inc., a Delaware corporation, Defendants.

No. CV–99–12700 LGB.

United States District Court, C.D. California.

July 31, 2000.

---

Herbert Hafif, Michael G Dawson, Larry A Sackey, Herbert Hafif Law Offices, Claremont, CA, for Michael NMI Gardner, Bien Licensing Agency Inc.

C Dennis Loomis, James Douglas Weiss, Troop Steuber Pasich Reddick & Tobey, Los Angeles, CA, for Nike Inc, an Oregon Corporation, defendant.

or Rivas, had any intent to benefit Bital.

## ORDER GRANTING DEFENDANT NIKE'S MOTION FOR SUMMARY JUDGMENT

BAIRD, District Judge.

## I. INTRODUCTION

Plaintiffs Michael Gardner and Bien Licensing Agency, Inc. bring this action for declaratory relief against Nike. Nike moved for summary judgment arguing that plaintiffs do not have standing to bring this action.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1992, Nike and Sony entered into a licensing agreement. That licensing agreement granted Sony certain specific rights to a Nike-created cartoon character—MC Teach.[1] Both parties agree that the agreement contemplated an exclusive license. (See Pl.'s Statement of Genuine Issues ¶ 7.) Subsequently, Sony transferred all its rights in the exclusive license to plaintiff Gardner. As a result, Gardner, through its exclusive licensing agent, Bien Licensing Agency, Inc., started making use of the character on various products.

As a result of plaintiffs' use of the character on educational materials, Nike has threatened legal action against plaintiffs and their proposed licensees. As a result of such threats, plaintiffs first filed suit in state court seeking declaratory relief, alleging slander of title and intentional interference with economic relations. Subsequently, plaintiffs voluntarily agreed to dismiss their tort causes of action, leaving only the action for declaratory relief. However, at the eve of trial, the state court dismissed the action without prejudice for lack of subject matter jurisdiction.

On December 3, 1999, plaintiffs filed their cause of action in this Court seeking declaratory relief. Plaintiffs filed their suit against Nike and Sony. However, Sony is intended to be an involuntary plaintiff (and not a defendant) and the parties stipulated to such treatment. The parties and Sony have further agreed that Sony is not required to participate actively in the litigation and will abide by the Court's ultimate judgment, subject to receiving notice and having an opportunity to be heard concerning such judgment.

On June 5, 2000, Nike filed the instant motion for summary judgment. In this motion, Nike claims that the case must be dismissed because plaintiffs do not have standing to sue. First, Nike argues that Bien Licensing Agency, Inc. does not have standing to sue because as an agent of Gardner, it does not have standing to sue on its principal's contract with a third party. Similarly, to the extent that Gardner predicates his standing on his agency relationship with Sony, Nike argues that he too lacks standing. Additionally, Nike argues that Gardner and Bien also do not have standing to bring this action because Sony's assignment of rights under the Nike exclusive license was invalid. In their opposition, plaintiffs do not address the agency argument, and thus neither will the Court. Rather, plaintiffs argue that under the 1976 Copyright Act, an exclusive licensee such as Sony can freely assign its rights in the license to a third party such as Gardner, without the original licensor's consent. Also on June 5, 2000, plaintiffs filed their own motion for summary adjudication. That motion also hinges on the same argument—namely, whether plaintiffs have standing to bring this action. Thus, the Court addresses both motions in this Order.

---

1. Those rights included the right to use the character, and any modification or alterations, in perpetuity throughout the world on and in the packaging of phonograph records, in publicity, advertising and allied exploitation of the records, in television programs or motion pictures embodying the musical com- positions embodied on the records, on educational material and on clothing, provided that if the character is used on clothing, the word "Nike" and the Nike and Swoosh trademarks will not appear as part of the character. (See Complaint Ex. B.)

## III. STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

## IV. ANALYSIS

As briefed by the parties, the determinative issue here is whether the 1976 Copyright Act allows Sony to transfer its rights under an exclusive license lacking the original licensor's consent. If the assignment is valid, then plaintiffs may bring this action. However, if the assignment is not, then judgment must be entered in defendant's favor. The essential facts here are undisputed. Nike gave Sony an exclusive license to use a copyrighted character ("the MC Teach character") for defined and limited purposes. All parties agree that the license was exclusive. (Pl.'s Statement of Genuine Issues ¶ 7.) Sony subsequently granted plaintiff Gardner all its rights under the license. (Pls.' Statement of Genuine Issues ¶ 2.) In other words, Sony "sub-licensed" or transferred its rights under the license to Gardner. Nike never gave explicit consent to the transfer of rights. (Pls.' Statement of Genuine Issues ¶ 5.) Nike claims that this sub-license or transfer, lacking Nike's consent, is invalid. Because such sub-license

is invalid, Nike claims that plaintiffs do not have any ownership interest in the copyright and thus do not have standing to bring this suit. Plaintiffs argue, however, that under the Copyright Act of 1976, Sony may transfer its rights to the copyright, regardless of Nike's consent, because the exclusive license made Sony an "owner" under the Act. As an "owner," Sony was thus able to transfer whatever right it had under 17 U.S.C. § 201(d).

As evidenced by the parties' papers, the sole disagreement at this juncture is the interpretation of 17 U.S.C. § 201. Section 201 provides that:

> (d) Transfer of Ownership.—
>
> (1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.
>
> (2) Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section· 106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

17 U.S.C. § 201(d). Defendant contends that the section does not confer upon Sony (the licensee) the right to assign the license. Rather, defendant argues that this section only confers upon Sony the "protections and remedies" of a copyright owner—namely, the right to sue and defend suits in its own name. Because Sony may not be viewed as an "owner" for purposes of assignability, Nike argues that Sony must obtain Nike's permission before assigning its license to anyone.[2]

---

**2.** Under the Copyright Act of 1909, a licensee did need permission from the licensor in order to transfer any rights under the license. That point is not challenged here. Rather,

plaintiffs argue that the Act of 1976 changed that principle by giving exclusive licensees title over the copyright.

## A. The 1909 Copyright Act

As the parties noted, this is a case of first impression under the 1976 Copyright Act. Under the 1909 Copyright Act, the instant issue would have been easily resolved because, under that Act, a licensee (whether exclusive or not) "had no right to resell or sublicense the rights acquired unless he has been expressly authorized so to do." 3 Nimmer, *Nimmer on Copyright* § 10.01[C][4] (1999) (citing *Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir.1984) (interpreting the 1909 Copyright Act)). The reasoning behind such rationale was that under the 1909 Act, a copyright owner could not assign "anything less than the totality of rights commanded by copyright." Nimmer, *supra* § 10.01[A]. Thus, a transfer of anything less than such a totality was considered a license. *See* Nimmer, *supra* § 10.01[A].

"The purpose of such indivisibility was to protect alleged infringers from the harassment of successive law suit. This result was achieved because only the copyright proprietor (which would include an assignee but not a licensee) had standing to bring an infringement action." *See* Nimmer, *supra* § 10.01[A]. This indivisibility doctrine created several problems for copyright licensees. First, because such licensee (whether exclusive or not) did not acquire ownership rights, she could not bring an infringement action unless the copyright proprietor was joined. *See* Nimmer, *supra* § 10.01[C][1]. The second problem arose "by reason of the rule that statutory copyright in a theretofore unregistered work was obtained by publication bearing a copyright notice in the name of the copyright owner." *See* Nimmer, *supra* § 10.01[C][2]. Thus, if an author of an unpublished article granted a magazine publisher only the right to reproduce the article in magazine form (which made the publisher a licensee, not a proprietor), and the magazine only carried a notice bearing the name of the magazine publisher, then the author's work was published without a valid notice in the name of the work's proprietor, and thus became part of the public domain. *See* Nimmer, *supra* § 10.01[C][1]. Third, because the Act only provided for the recording of "assignments," the indivisibility doctrine prevented (at least in theory) exclusive licensees from registering their license. *See* Nimmer, *supra* § 10.01[C][3]. Fourth, the rules relating to formalities and presence of consideration differed based on whether the "transfer" was a license or assignment. *See* Nimmer, *supra* § 10.01[C][5]. Licenses, even if exclusive, did not need to be in written form in order to be valid. *See* Nimmer, *supra* § 10.01[C][5]. In contrast, however, licenses were revocable in the absence of a valid consideration. *See* Nimmer, *supra* § 10.01[C][5]. Assignments, on the other hand, might be effective and irrevocable although they lacked any consideration. *See* Nimmer, *supra* § 10.01[C][5]. Finally, and as discussed above, a licensee had no right to transfer her rights under a license without the proprietor's consent, because that licensee had no proprietary right in its license independent from that of the original owner. *See* Nimmer, *supra* § 10.01[C][4].

## B. The 1976 Copyright Act

The 1976 Act did away with the rule of indivisibility vis-a-vis exclusive licenses. *See* Nimmer, *supra* § 10.02[A]. The abolition of that rule is demonstrated in two of the Act's sections. First, section 101 of the Act provides that a " 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license." 17 U.S.C. § 101. Under that definition, an exclusive license is equated with an assignment. Second, section 201 provides that "[a]ny of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106,

may be transferred ... and owned separately." 17 U.S.C. § 201.

The abolition of indivisibility resolved several of the aforementioned problems that existed under the 1909 Act. First, an exclusive licensee now has the right to sue in her own name (for any infringement of the assigned right). *See* Nimmer, *supra* § 10.02[B][1]. Second, because the act of publication is no longer the sole indicia of ownership (rather it is the creation of the work and its affixation in any tangible medium), an incorrect name in the copyright notice is irrelevant. *See* Nimmer, *supra* § 10.02[B][2]. Third, under the current Act, all licenses (or any other documents) are recordable, thereby giving all interested parties constructive notice of the facts stated in such recorded document. *See* Nimmer, *supra* § 10.02[B][3]. Fourth, because exclusive licenses are now treated like assignments, the rules relating to formalities and consideration equally apply. *See* Nimmer, *supra* § 10.02[B][5]. However, "[i]t remains true that non-exclusive licenses are revocable absent consideration." *See* Nimmer, *supra* § 10.02[B][5]. Finally, according to *Nimmer*,

> [t]he limitations on a licensee's right to re-sell or sublicense under the 1909 Act would appear to continue under the current Act with respect to nonexclusive licensees, but not as to exclusive licensees. The latter having acquired "title" or ownership of the rights conveyed, may reconvey them absent contractual restrictions.

Nimmer, *supra* § 10.02[B][4]. Nike, of course, challenges that final interpretation.

### C. An Exclusive Licensee Does Not Have the Right to Transfer His Rights in the License

Nike's argument is textual: it claims that if Congress had intended for an exclusive licensee to have the right to license

her rights in the license to a third party, Congress would have said so explicitly. Rather, Nike argues, Congress chose to grant exclusive licensees only the "protections and remedies" afforded by the Act. Thus, because the right to license is not a "protection or remedy," Nike argues that the rule against assignability of licenses under the 1909 Act should still control.

Plaintiffs argue, however, that the first paragraph of section 201(d) clearly allows the transfer of ownership of a trademark. Thus, plaintiffs argue, one of the protections and remedies to such a "new" owner includes the right to transfer the rights under the license. Contrary to plaintiffs' argument, however, the first paragraph of section 201(d) is not applicable here. That paragraph refers to a copyright owner's right to transfer her *ownership* in that right, in whole or in part. In this paragraph, Congress addressed the divisibility of the copyright owner's interest in the totality of the copyright—the ownership rights. What that means is that if party A owns all the rights in a particular copyright, A can sell an undivided half interest of that right to party B.[3] Party B would then be considered a part owner of that right, and as such entitled to all the rights, benefits, protections, and remedies under the Act. Essentially, party B would acquire the status of a joint owner. This is a contrast to the second paragraph of section 201.

The second paragraph does not address the transfer of ownership, rather it addresses the transfer of "exclusive rights." The distinction is essential. A licensee under section 201(d)(2) is not a "joint owner" of the copyright, but rather "[t]he owner of [a] particular exclusive right." 17 U.S.C. § 201(d)(2). Accordingly, the original owner of a copyright could transfer her right to reproduce to party B, her right to prepare derivatives to party C, her right to distribute copies to party D, her right to

---

**3.** Or, that party could bequeath that right, in equal (or unequal) parts, to her five children. As such, each child would own a twenty per-cent interest in the copyright and its corresponding revenue.

perform the work publicly to party E, her right to display her work publicly to party F, and her right to perform her work publicly through a digital audio transmission to party G. The owner of that specific right is then "entitled, to the extent of that right, to all the protection and remedies accorded to the copyright owner by this title." 17 U.S.C. § 201(d)(2). As demonstrated by the language, and contrary to Nimmer's interpretation, Congress chose to grant owners of specific rights only the protection and remedies of the Copyright Act accorded to the copyright owner.

Conversely, there is no indication, either in the statutory text or in the Notes of Committee on the Judiciary, that Congress intended to bestow upon exclusive licensees the *right* to sublicense the subject matter of their license. Clearly, Congress was aware that prior to the 1976 Act, licensees could not sublicense their right in an exclusive license. *See* Nimmer, *supra* § 10.01[C][4] (citing pre–1976 cases holding that a licensee of a copyright did not have a right to resell her rights in that license). With that knowledge in hand, however, Congress chose to limit exclusive licensees' "benefits" under the 1976 Act to "protection and remedies." As argued by defendant, "[t]he right to freely assign the licensed rights cannot, by any fair interpretation, be characterized [as] either." (Def.'s Mem. P. & A. Support Mot.Sum.J. at 14.)[4]

## V. CONCLUSION

Consequently, Sony's assignment of its rights to Gardner under the exclusive li-

cense is invalid. As such, plaintiffs Gardner and Bien have no standing to bring this action. Accordingly, defendant's motion for summary judgment is GRANTED, plaintiffs' motion for summary adjudication is DENIED, and plaintiffs' complaint for declaratory judgment is hereby DISMISSED.

**IT IS SO ORDERED.**

---

4. Plaintiffs cite to *In re Patient Education Media, Inc.*, 210 B.R. 237 (Bkrtcy.S.D.N.Y. 1997) to support their position that a copyright licensee may transfer her rights in the license to a third party without the original licensor's consent. The language in this case does support plaintiffs' argument. However, that case has minimal persuasive value. First, the portion of the case dealing with exclusive licensee is *dicta,* as the license in question in *In re Patient Education Media, Inc.* was a non exclusive license. Thus the court there did not need to reach the instant issue. Second, the *dictum* in that case is predicated upon that court's overt and critically important mischaracterization of the plain language of section 201(d)(2). In the opinion, the *In re Patient Education Media, Inc.* Court states that section 201(d)(2) grants "[t]he holder of the exclusive license ... all the *rights* and protections of the copyright owner." *Id.* at 240. The statute, however, does not couch a licensor's benefits in terms of "rights," but rather uses the narrower terms "protection and remedies"—a critical difference.