**Nancy DAHLEN, Plaintiff,**

v.

**MICHIGAN LICENSED BEVERAGE ASSOCIATION and Joseph A. Baker, Defendants.**

No. 00–71061.

United States District Court,
E.D. Michigan,
Southern Division.

March 21, 2001.

Bernard J. Cantor, Troy, MI, for plaintiff.

Jeffrey A. Sadowski, Bloomfield Hills, MI, Gregory T. Worker, Onsted, MI, for defendant.

## OPINION AND ORDER REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

ROSEN, District Judge.

## I. INTRODUCTION

On February 28, 2000, Plaintiff Nancy Dahlen commenced this action against Defendants Michigan Licensed Beverage Association and Joseph A. Baker, asserting copyright infringement and unfair competition claims arising from Defendants' alleged use and misappropriation of Plaintiff's poster, entitled "We Care About You," in developing their own poster, entitled "Do You Know Your Rights?"[1] This Court has subject matter jurisdiction under 28 U.S.C. § 1338 and 28 U.S.C. § 1367(a).

By cross-motions filed on October 31, 2000, both Plaintiff and Defendant seek summary judgment in their favor on each of Plaintiff's claims. The parties have re-sponded to each other's motions, and have filed replies in further support of their own motions. On March 12, 2001, the Court heard argument on these motions. Having reviewed the parties' briefs and supporting materials, as well as the record as a whole, and having considered the arguments of counsel at the March 12 hearing, the Court is now prepared to rule on these cross-motions. This Opinion and Order sets forth the Court's rulings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Although the parties and their counsel recite lengthy background "facts" in their briefs, often unaccompanied by any citation to the record, the operative facts of this case are straightforward and largely undisputed. Plaintiff Nancy Dahlen is a Michigan resident who has been active for a number of years in organizations—including "Michigan Voice," an organization founded by Plaintiff—which represent the interests of small business owners. Plaintiff holds the copyright to the "We Care About You" poster at issue in this case.

Defendant Michigan Licensed Beverage Association is a state-wide trade association of liquor license holders. Defendant is organized as a non-profit corporation under the Internal Revenue Code, and has over two thousand constituent members. The Association has fewer than ten full-time employees, and is governed by a 23–member executive board comprised exclusively of Michigan bar owners.[2]

### B. The Development of the "We Care About You" Poster

Plaintiff's claims in this case rest upon a poster entitled "We Care About You," which advises bar patrons of facts relating

---

1. On September 19, 2000, Plaintiff dismissed her claims against Defendant Joseph Baker, leaving the Michigan Licensed Beverage Association as the sole Defendant. Accordingly, the remainder of this Opinion refers to this latter party as "Defendant."

2. Former Defendant Joseph Baker is a member of the Defendant Association, and served on its executive board in 1997 and 1998.

to drinking and driving, including the rights of individuals who are stopped by police for suspicion of driving under the influence of alcohol ("DUI"). (*See* Plaintiff's Copyright Motion, Ex. A.) The poster's text includes (i) a chart of approximate blood alcohol levels, depending on an individual's weight and drink consumption; (ii) advisory language about the blood alcohol levels at which Michigan law treats a driver as impaired or legally intoxicated; (iii) information about how the human body metabolizes alcohol, and suggestions as to how to regulate this process; (iv) information about the procedures employed by the police when investigating a possible DUI charge; and (v) a toll-free number to call to seek the advice of an attorney who specializes in defending against DUI charges.

In January of 1997, in connection with her small business advocacy group, Michigan Voice, Plaintiff met with former Defendant Joseph Baker, a Michigan Voice subscriber and the part owner of the "L.A. Café," a Michigan bar. During this meeting, Baker expressed an interest in developing materials that would inform bar patrons of their rights with regard to drinking and driving.

Over the next several months, Plaintiff worked to develop the "We Care About You" poster. She was aided in this effort by her sister, Denise Lutz, who created the graphics and layout for the poster, and by Dee Lyons, who typeset the poster on a computer. Plaintiff herself authored the text for the poster, using such sources as the Internet, law enforcement agencies, and state statutes. By October of 1997, Plaintiff had completed a version of the poster. She then printed 250 copies of the poster, and began to disseminate these copies.

In approximately January of 1998, Plaintiff met again with Baker, and showed him the poster. Baker, then a member of Defendant's executive board, suggested that Plaintiff might wish to advertise her poster

in one of Defendant's publications, the Beverage Journal. Soon thereafter, Plaintiff attended a meeting at Defendant's office in Lansing, along with Baker, one of Defendant's employees, Larry Stotz, and Plaintiff's friend, Mike Bushta. At this meeting, Baker and Stotz asked Plaintiff to present her poster to Defendant's executive board for possible purchase by Defendant, and Plaintiff agreed to do so. However, at subsequent committee and board meetings in February of 1998, Defendant elected to create its own poster rather than purchase Plaintiff's, in part because the executive board concluded that the price sought by Plaintiff would exceed Defendant's cost for developing its own poster.

## C. The Development of the Allegedly Infringing "Do You Know Your Rights?" Poster

In her Complaint, Plaintiff alleges that Defendant's "Do You Know Your Rights" poster was developed through the unlawful misappropriation of her "We Care About You" poster. There is, in fact, considerable overlap in the subject matter of the two posters, although Defendant's poster is largely limited to a detailed discussion of an individual's rights, and suggestions for appropriate responses, upon being stopped by the police on suspicion of a DUI violation. In addition, the two posters feature somewhat similar layouts—a title and a paragraph of text at the top, a box in the middle containing more text, and bulleted paragraphs of additional text surrounding this center box—though, again, their layouts are not identical.

According to the brief in support of Defendant's motion, the initial conception of the "Do You Know Your Rights?" poster dates back to 1994, when Defendant's executive board first expressed the desire to advise the patrons of its member establishments as to their rights relating to drinking and driving.[3] Apparently, Joseph Baker was assigned the task of researching

---

3. Defendant's brief purports to quote from the

minutes of executive board and committee

this idea and contacting attorneys who could assist him in preparing the text of such an advisory. Baker evidently reported on his progress in April of 1995, but Defendant took no further action until early 1998, when its board declined to purchase Plaintiff's poster and elected to develop its own.

Having declined to do business with Plaintiff, Defendant set about creating its own poster during the remainder of 1998. However, according to a declaration submitted by one of Defendant's former employees, Debbie Bonk, Defendant did not begin this project with a blank sheet of paper. Rather, Bonk asserts that Joseph Baker, acting on Defendant's behalf, provided her with a copy of Plaintiff's poster, and instructed her to copy it by redrawing it on her computer, using the "Pagemaster" software package. (*See* Plaintiff's Response, Ex. D, Bonk Decl. at ¶¶ 2–3.) Defendant then made several revisions to this poster, in part through Bonk and in part after she resigned her employment with Defendant in May of 1998. For example, Defendant's poster incorporates a true/false question-and-answer format from a document originally authored by Baker and entitled (like the poster) "Do You Know Your Rights?," (Defendant's Motion, Ex. 8), and also incorporates text from one of Defendant's prior publications, "Techniques of Alcohol Management," (Defendant's Motion, Ex. 9).[4]

In December, 1998, Defendant ordered 5,000 copies of its completed poster, and sent complimentary copies to its membership. In early 1999, Plaintiff saw Defendant's poster on display at a party store in Howard City, Michigan. This lawsuit followed.

meetings during this time frame. Yet, these minutes are nowhere to be found among the exhibits accompanying Defendant's motion. At any rate, the Court need not decide whether to credit these asserted facts, since the disposition of the parties' cross-motions does not depend upon whether Plaintiff or Defendant first conceived of the ideas behind their respective posters.

### D. Procedural Background

Plaintiff first registered her copyright in the "We Care About You" poster on February 24, 1998. (*See* Plaintiff's Copyright Motion, Ex. G.) This initial registration listed only Plaintiff as the author, and characterized her contribution as "[e]ntire text, informational poster." (*Id.*) A copy of the poster apparently accompanied this registration. As noted earlier, however, Plaintiff was not the sole author of this poster; rather, her sister, Denise Lutz, created its layout and graphic design. Accordingly, on February 25, 2000, Plaintiff filed a "Form CA—Supplementary Registration" with the U.S. Copyright Office, disclosing Lutz as the co-author of the poster, and describing her contribution as "graphics and layout." (*Id.*) That same day, Lutz executed an assignment of her rights in the poster to Plaintiff. (Plaintiff's Copyright Motion, Ex. H.)

Just three days later, on February 28, 2000, Plaintiff commenced this action. In her three-count Complaint, Plaintiff asserts claims of copyright infringement, unfair competition under 15 U.S.C. § 1125, and common-law unfair competition. On October 31, 2000, the parties filed cross-motions seeking summary judgment in their favor on each of these claims. The Court heard argument on these motions on March 12, 2001.

### III. *ANALYSIS*

### A. The Standards Governing the Parties' Cross–Motions for Summary Judgment

Both parties seek summary judgment in their favor pursuant to Fed.R.Civ.P. 56.

**4.** In addition, Defendant became concerned that its poster could represent the unauthorized practice of law by a non-lawyer, and it sought the advice of the State Bar of Michigan on this issue. Defendant ultimately addressed this concern by inserting the name and telephone number of an attorney, Travis Ballard, into its poster, and indicating that Ballard was the source of the legal advice set forth in the poster.

Under this Rule, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the federal courts' review of motions for summary judgment. These cases, in the aggregate, lowered the movant's burden in seeking summary judgment. As stated in *Celotex:*

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

After reviewing the above trilogy of cases, the Sixth Circuit adopted a series of principles governing motions for summary judgment. These principles include:

> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

> * The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

> * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989); *see also Nernberg v. Pearce*, 35 F.3d 247, 249 (6th Cir.1994). The Court will apply these standards in considering the parties' cross-motions for summary judgment.

## B. Neither Party Is Entitled to Summary Judgment on Plaintiff's Claim of Copyright Infringement

In their respective motions, Plaintiff and Defendant both argue that they are entitled to summary judgment in their favor on Plaintiff's claim of copyright infringement. In support of her motion, Plaintiff asserts that she holds a copyright in the "We Care About You" poster, with its attendant presumption of validity, and that she has produced sufficient evidence of copying for the Court to conclude, as a matter of law, that Defendant's "Do You Know Your Rights?" poster unlawfully infringes Plaintiff's copyrighted work. For its part, Defendant contends (i) that purported flaws in Plaintiff's copyright registration defeat her infringement claim; (ii) that Defendant's poster does not incorporate any copyrightable elements of Plaintiff's poster, and (iii) that, in any event, any such copying would be protected by the doctrine of "fair use." Having considered these arguments, the Court finds each of them lacking in merit.

There are two basic elements to a claim of copyright infringement: (1) ownership of a valid copyright in the work in question, and (2) unlawful copying of original elements of the work. *See Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991); *Ellis v. Diffie,* 177 F.3d 503, 506 (6th Cir.1999). This second element, in turn, may be established either through direct evidence of misappropriation or through an inference of unlawful copying, which arises where (1) the defendant had access to the plaintiff's work, and (2) the two works are substantially similar. *Ellis,* 177 F.3d at 506.

**1. The Purported Defects in Plaintiff's Copyright Registration Are Not Fatal to Her Claim of Infringement.**

■ Regarding the first element, ownership of a valid copyright, Defendant asserts both procedural and substantive challenges to Plaintiff's claim of infringement. First, Defendant seizes upon apparent defects in Plaintiff's registration of the copyright for the "We Care About You" poster, and argues that these defects leave Plaintiff without any protected interest to vindicate in this action. In particular, Defendant notes that Plaintiff's initial copyright registration seemingly encompassed only the text of the poster, and not its layout or graphical design. Because, in Defendant's view, the text of the poster is ineligible for copyright protection—a view which, as discussed below, the Court does not entirely share—Defendant contends that Plaintiff's infringement claim necessarily must rest upon unlawful copying of the poster's layout or design. Yet, these elements of the poster were authored by Plaintiff's sister, and not Plaintiff herself, and were not disclosed in the initial copyright registration, but only in a supplemental filing on the eve of this litigation. Moreover, Defendant argues that the assignment of rights from Plaintiff's sister to Plaintiff, also on the eve of this litigation, was a "sham" transaction unsupported by consideration. From all this, Defendant concludes that the "ownership of a valid copyright" element is lacking in this case.

This argument, however, rests upon a number of flawed legal premises.[5] First, Defendant cites no authority for the proposition that an assignment of copyright rights must be supported by consideration. In fact, the Copyright Act itself includes no such requirement, *see* 17 U.S.C. § 204(a) (requiring only that a transfer of copyright ownership be "in writing and signed by the owner of the rights conveyed"), and the courts have not read such a requirement into the statute, *see, e.g., Gardner v. Nike, Inc.,* 110 F.Supp.2d 1282, 1285–86 (C.D.Cal.2000). In any event, because § 204(a), like a traditional statute of frauds, is intended "to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership," the courts have been unwilling to permit a third party, such as Defendant here, to defeat a claim of infringement by pointing to alleged defects in an assignment between a copyright holder and a transferee, at least where neither of these latter two parties questions the validity of the transfer. *See Imperial Residential Design, Inc. v. Palms Development Group, Inc.,* 70 F.3d 96, 99 (11th Cir.1995). In this case, there is no evidence of a dispute between Plaintiff and her sister regarding the latter's February 25, 2000 assignment of rights. Accordingly, Defendant may not raise such a challenge in their stead.

In addition, Defendant's argument greatly overstates the significance of copyright registration. Although Defendant seems to suggest that there is some impropriety or "gamesmanship" in Plaintiff's effort to "fix" her copyright registration on the eve of this litigation, the Copyright Act expressly contemplates—and, indeed, authorizes—such a "strategy," requiring only

---

5. Unfortunately, Plaintiff did not identify any of these flaws in her response to Defendant's motion, leaving it to the Court to construct arguments on her behalf.

that registration must precede the commencement of an action for infringement. *See* 17 U.S.C. § 411(a). At most, any delay in the registration of certain of the constituent elements of the "We Care About You" poster might preclude an award of statutory damages, if Defendant's infringement is found to be limited to these later-registered elements. *See Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir.1994).[6]

### 2. The "We Care About You" Poster Possesses the Requisite Originality To Qualify for Copyright Protection.

■ Turning, then, to the substantive scope of Plaintiff's copyright, the Court first observes that Plaintiff's certificate of copyright "creates a presumption of the copyright's validity," and that Defendant bears the burden of rebutting this presumption. *Hi–Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir.1995). In an effort to meet this burden, Defendant adopts a "divide and conquer" approach, attacking each constituent element of the "We Care About You" poster as ineligible for copyright protection. First, as to the text of the poster, Defendant cites Plaintiff's deposition testimony that she obtained the information for her poster from such public sources as the Internet, law enforcement agencies, and Michigan statutes. The Copyright Act provides, and the Supreme Court has confirmed, that copyright

protection does not extend to raw facts, nor to pre-existing material employed in a copyrighted work. *See* 17 U.S.C. § 103(b); *Feist*, 499 U.S. at 347–50, 361–62, 111 S.Ct. at 1288–90, 1296.

Defendant argues that Plaintiff's reliance on such brute facts and public domain materials defeats any claim of copyright protection for the text of her poster. Yet, *Feist* also confirms that compilations of facts or pre-existing material "may possess the requisite originality" to warrant copyright protection, where, for example, the "compilation author ... chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers." *Feist*, 499 U.S. at 348, 111 S.Ct. at 1289. Moreover, the Court emphasized that only a "minimal degree of creativity" is required to secure copyright protection. 499 U.S. at 348, 111 S.Ct. at 1289. Defendant has not shown that Plaintiff's selection and arrangement of facts and pre-existing material is so obvious or inevitable that it lacks even the "modicum of creativity necessary to transform mere selection into copyrightable expression." 499 U.S. at 362, 111 S.Ct. at 1296. Moreover, in light of Plaintiff's testimony that her poster's text is not a verbatim reproduction of pre-existing material from public sources, but instead is "paraphrased" to, for example, omit the "ten dollar words" found in the Michigan statutes, (Plaintiff's 8/28/00 Dep. at 90–91), it

6. Even then, it is by no means clear that Plaintiff's initial registration was so deficient that it effectively excluded all constituent elements of the poster apart from the text, or that this defect could not be cured by Plaintiff's supplemental February 25, 2000 filing, which encompassed these elements. To the contrary, the case law suggests just the opposite, that Plaintiff's status as copyright owner of all constituent elements of the poster, through a combination of her own authorship and her sister's assignment, renders her initial registration effective to encompass all of these elements, particularly where the initial registration was accompanied by the entire poster, and not just its text. *See Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739,

746–47 (2d Cir.1998) (holding that, in the event of common ownership, the registration of a derivative work overcomes the lack of registration of the pre-existing work); *Eastern America Trio Products, Inc. v. Tang Electronic Corp.*, 97 F.Supp.2d 395, 416–17 (S.D.N.Y. 2000) (holding that the plaintiff's registration of its sales catalogs and flyers permitted a suit for infringement of each copyrightable work contained in those publications), *appeal dismissed*, 243 F.3d 559, 2000 WL 1521479 (Fed. Cir. Sept.7, 2000). Nevertheless, because the resolution of this issue would at most affect only the damages recoverable by Plaintiff, and not the viability of her underlying claim of infringement, the Court need not decide this question at this juncture.

is not evident as a matter of law that her text lacks the requisite originality to qualify for copyright protection. Thus, the Court declines Defendant's invitation to broadly deny copyright protection to Plaintiff's selection of source materials and crafting of language in developing the textual portion of the "We Care About You" poster.

▆▆ Similarly, the Court cannot accept Defendant's conclusory assertions that the layout of Plaintiff's poster is "typical," "obvious," and generally "unoriginal." Plaintiff's arrangement includes such features as a boldface and enlarged block of text at the top of the poster to catch the reader's attention and convey the central message of safety, the use of bold or capitalized letters throughout the poster to emphasize certain words and phrases, bullet points highlighting various facts relating to drinking and driving, a box of text in the middle of the poster surrounded by two columns of additional text, and a border around the outer edges of the poster. None of these features is essential to an informational poster. This arrangement does not conform to an "age-old practice," nor is it "so commonplace that it has come to be expected as a matter of course." *Feist*, 499 U.S. at 363, 111 S.Ct. at 1297. Rather, the Court finds that the poster's layout possesses the requisite "minimal level of creativity" to qualify for copyright protection.[7]

### 3. The Present Record Does Not Establish Unlawful Copying, or Lack Thereof, as a Matter of Law.

▆▆ Accordingly, having concluded that Plaintiff's poster is entitled to at least some degree of copyright protection, the Court turns to the parties' respective claims that Defendant did or did not, as a matter of law, copy original, protected elements of Plaintiff's poster. Initially, Plaintiff argues that she has established unlawful copying as a matter of law, through direct evidence that one of Defendant's employees, Debbie Bonk, used Plaintiff's poster as a template in her initial development of Defendant's poster. Plaintiff contends that this direct, largely unrefuted evidence of copying alone suffices to establish the second element of a claim of infringement, and entitles her to summary judgment in her favor on this claim.[8]

7. Defendant's appeal to the doctrine of "merger" fails for the same reason. This doctrine seeks to preserve the important distinction in copyright law between an idea (which is not eligible for protection) and the expression of an idea (which is), by denying copyright protection in those situations where "there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir.1991). As explained above, Defendant has not shown that there is only one or a small number of ways to express the idea of advising a bar patron about matters relating to drinking and driving, much less that a poster conveying this information will invariably look very much like Plaintiff's poster. Indeed, Defendant undercuts its appeal to the doctrine of merger by identifying several purported differences between the parties' two posters, in an effort to refute Plaintiff's contention that these works are substantially similar.

8. In characterizing this evidence as largely unrefuted, the Court recognizes that Defendant vehemently challenges the veracity of Bonk's statements, in both her declaration and at her deposition, that she repeatedly referred to Plaintiff's work during the process of developing Defendant's poster. For example, Defendant cites evidence of Bonk's purported animosity toward Defendant and its chief executive officer, Louis Adado, and points to Bonk's questionable deposition testimony as to whether she applied for unemployment benefits upon resigning from her position with Defendant. Yet, this evidence merely challenges Bonk's overall veracity, and not the factual basis underlying her specific testimony regarding her role in the development of Defendant's poster. The only evidence Defendant offers on this specific point is the statements in Adado's declaration that Bonk "[n]ever advised me that [she] was utilizing [Plaintiff's] poster in continuing to work on [Defendant's] poster," and that, had he known, he "would have instructed [Bonk] to stop immediately" because such use was "not necessary" to the development of Defendant's poster. (Defendant's Motion, Ex. 1, Adado Decl. at ¶ 11.) Plainly, these assertions

While this is a close question, the Court cannot agree. As Plaintiff concedes, "an inference of copying is rebuttable by evidence of independent creation of the allegedly infringing work." *Ellis*, 177 F.3d at 507. Moreover, Plaintiff's argument too readily elides the distinct questions of copying and unlawful appropriation. *See Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139–40 (2d Cir.1992). Notwithstanding the protestations of Plaintiff's counsel at oral argument, it is not enough that Defendant *began* its development process by consulting Plaintiff's poster, nor even that Defendant deliberately set out to create a "knock-off" of Plaintiff's work. *See Queenie, Ltd. v. Sears, Roebuck & Co.*, 124 F.Supp.2d 178, 182 (S.D.N.Y.2000). Rather, in considering whether Defendant's copying of Plaintiff's work was unlawful, it is the *end products* that matter, and the relevant question is whether the two parties' works are substantially similar. *See Green v. Lindsey*, 885 F.Supp. 469, 480–81 (S.D.N.Y.1992) (observing that a "defendant's good or bad faith is irrelevant to the critical question in misappropriation cases, namely, *whether* defendant has appropriated plaintiff's protected expression"), *aff'd*, 9 F.3d 1537 (2d Cir.1993). Thus, even where an author admits that his work is traceable in part to a prior copyrighted work, thereby conceding the "copying" aspect of the inquiry, he still "may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to … the plaintiff's." *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir.1982); *see also Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir.1995); *Queenie, Ltd.*, 124 F.Supp.2d at 182; *Duffy v. Penguin Books USA Inc.*, 4 F.Supp.2d 268, 274 (S.D.N.Y. 1998) (noting that a statement that the plaintiff's work had been changed "so people don't sue me for getting too close to their verbiage," while "perhaps relevant to the issue of actual copying," did not "create any presumption of or constitute any

proof of improper appropriation," and observing that "[a]ltering text so as to diminish the prospect of litigation is a wise, if not always effective, practice"); *Sinicola v. Warner Bros., Inc.*, 948 F.Supp. 1176, 1190 (E.D.N.Y.1996) ("Copyright infringement requires a showing of substantial similarity whether or not a work is 'adapted' from another.").

Plaintiff's direct evidence here—principally, the affidavit and testimony of Debbie Bonk—establishes Defendant's copying but not its unlawful appropriation, at least not as a matter of law. However significant a role Plaintiff's work might have played at the inception of Defendant's development process, and however much or little Ms. Bonk believes she altered Plaintiff's work during this process, the fact remains (i) that work continued on Defendant's poster after Debbie Bonk resigned in May of 1998, with the finished product not completed until late 1998; and (ii) that *some* changes were made along the way, whether by Bonk or others, so that the resulting poster produced by Defendant is not a carbon copy of Plaintiff's work. Moreover, Defendant has offered evidence as to its "independent creation" of at least certain aspects of its poster, including (i) the title, "Do You Know Your Rights?", its true/false question-and-answer format, and some of its text, which purportedly derived from a pre-existing document authored by Joseph Baker, (*see* Defendant's Motion, Ex. 8); and (ii) another portion of the poster's text, which allegedly came from one of Defendant's pre-existing publications, entitled "Techniques of Alcohol Management," (*see* Defendant's Motion, Ex. 9). Given this record, the direct evidence produced by Plaintiff does not foreclose, as a matter of law, the possibility that Defendant sufficiently altered its finished work as to no longer constitute an unlawful appropriation of the protected elements of Plaintiff's poster.

fall well short of rebutting Bonk's version of the relevant events.

■ Consequently, the Court turns to the second method of establishing unlawful copying—namely, through a combination of access and substantial similarity. Defendant does not dispute its access to Plaintiff's work, leaving only the parties' contentions that their posters either are or are not substantially similar as a matter of law.[9] Initially, the Court notes that summary judgment should be granted only "sparingly" on the issue of substantial similarity, but that this Court may do so if, as a matter of law, a trier of fact would be compelled to conclude that the works are substantially similar (as Plaintiff argues), or, alternatively, if clear differences between the two works would preclude the trier of fact from finding substantial similarity (as Defendant contends). *See Wickham v. Knoxville Int'l Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir.1984).

Upon analyzing Plaintiff's and Defendant's works under the governing "ordinary observer" standard, *see Ellis*, 177 F.3d at 506, the Court is unable to conclude that either party should prevail as a matter of law. The two posters undeniably are similar in certain respects: for example, the text at the top of each poster is virtually identical, both feature two columns of bulleted text surrounding a center box with more text, and they share many of the topics addressed in the bulleted text—that drinking on an empty stomach may affect how the body metabolizes alcohol, the various procedures that police officers may employ during a DUI stop, whether compliance with these procedures is voluntary or mandatory, information relating to the blood and breath tests administered by the police, and that an individual arrested on a DUI charge has the right to make a telephone call. Given these common elements, the Court cannot say that the parties' posters are dissimilar as a matter of law, as Defendant contends in its motion.

Conversely, although the question is much closer, the Court finds itself unable to conclude as a matter of law that the two posters are substantially similar. The text in the center box of the two posters differs significantly, with Plaintiff's devoted to the issue of blood alcohol level, while Defendant's emphasizes certain key points of drinking and driving safely. Next, as noted earlier, Defendant's poster employs a true/false question-and-answer format, while Plaintiff's does not. Defendant's poster also uses various graphical elements—including a police siren, a driver's license, a question mark, and a camera—to highlight the topics addressed in the bulleted portion of the work, while Plaintiff's

---

9. At oral argument, Plaintiff's counsel suggested that there is some sort of "sliding scale" relationship between the elements of access and substantial similarity, with a greater showing as to one offsetting a lesser showing as to the other. The case law, however, largely fails to support this proposition. The Sixth Circuit, for example, has endorsed only half of this "equation," noting that "the stronger the similarity between the two works in question, the less compelling the proof of access needs to be." *Ellis, supra*, 177 F.3d at 507. As another court has explained, "[i]f the two works are so strikingly similar as to preclude the possibility of independent creation, 'copying' may be proved without a showing of access." *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir.1978).

There is scant authority, however, for the converse proposition—that is, that "more" access (whatever that might entail) can compensate for "less" similarity. Only the Ninth Circuit has endorsed what Professor Nimmer has termed the "inverse ratio rule," *see Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977), and courts in the Second Circuit have expressly criticized it, *see Green, supra*, 885 F.Supp. at 480. Moreover, even if the rule were applied, it would affect only "the quantum of proof necessary to create an inference of copying," and not "the quantum of proof of similarity, *i.e.*, substantial, necessary to prove misappropriation of expression." *Green*, 885 F.Supp. at 480. Once again, then, Plaintiff appears to overlook the distinction between copying and unlawful appropriation. Yet, as stated earlier, no matter how closely Defendant might have scrutinized Plaintiff's poster while developing its own, the standard remains the same—namely, Defendant avoids liability for copyright infringement so long as its and Plaintiff's finished works are not substantially similar.

poster uses more traditional bullet symbols. In light of these and other differences, the Court declines to rule that the parties' works are substantially similar as a matter of law, as Plaintiff asserts in her motion. Rather, this question is better left for the trier of fact to resolve.

### 4. Defendant's Alleged Use of Plaintiff's Work in Developing Its Own Poster Is Not Protected by the Doctrine of Fair Use.

█ Finally, irrespective of the Court's conclusions as to copying or substantial similarity, Defendant appeals to the doctrine of "fair use" as shielding it from any liability for copyright infringement. As explained below, however, this argument fails to survive even the most cursory consideration.

The doctrine of fair use is codified at § 107 of the Copyright Act, which provides:

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work....

17 U.S.C. § 107.[10]

In this case, it is evident that Defendant did not use Plaintiff's poster for any of the purposes specifically enumerated in the preamble to § 107—namely, "criticism, comment, news reporting, teaching ..., scholarship, or research." This, however, does not foreclose Defendant's appeal to the doctrine of fair use, as the examples listed in the statutory preamble are merely illustrative, and do not establish "bright-line rules" for determining what is or is not a fair use. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577, 114 S.Ct. 1164, 1170, 127 L.Ed.2d 500 (1994). Rather, § 107 "calls for case-by-case analysis" of the four statutory factors, and these factors "[a]ll are to be explored, and the results weighed together, in light of the purposes of copyright." 510 U.S. at 577–78, 114 S.Ct. at 1170–71. Accordingly, the Court briefly examines these four factors as they apply to the present case.

The first of the four statutory fair use factors calls for consideration of "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). Defendant contends that this factor tips in its favor, in light of its status as a non-profit corporation, the fact that it did not charge its members for the poster or anticipate making a profit from its distribution, and the underlying purpose of the poster to educate bar patrons as to their rights.

---

**10.** It is important to note that Defendant's appeal to the doctrine of fair use necessarily rests on the assumption that Defendant used at least *some* portion of Plaintiff's copyrightable expression in developing its own poster. If this were not so, Defendant would be innocent of the charge of infringement, and would have no need to appeal to the exculpatory doctrine of fair use. Thus, for purposes of evaluating Defendant's claim of fair use, the Court may assume that Defendant's poster infringes at least some protectable elements of Plaintiff's work.

As an initial matter, the Court finds that Defendant has somewhat overstated its "nonprofit" purpose, where most or all of the constituent members of the Defendant association apparently are commercial establishments, and where it plainly advances the commercial interests of Defendant's membership to furnish safe drinking and driving information to the patrons of these establishments. As the Supreme Court has explained, "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562, 105 S.Ct. 2218, 2231, 85 L.Ed.2d 588 (1985). In addition, the educational value of Defendant's poster to the end users, bar patrons, does not insulate Defendant's own purposes from careful scrutiny. *See Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1386 (6th Cir.1996). In short, Defendant's non-profit status and the educational value of the poster do not broadly preclude further consideration of the totality of the circumstances surrounding the development of Defendant's poster.

More importantly, Defendant's use of Plaintiff's work utterly fails to satisfy the crucial "transformative" aspect of the Court's first-factor inquiry. Under the relevant Supreme Court precedents, this Court must consider whether, and to what extent, Defendant made a "transformative use" of Plaintiff's works. As stated by the *Campbell* Court, the "central purpose" of the first-factor inquiry is to determine "whether the new work merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579, 114 S.Ct. at 1171 (citations omitted). Similarly, in *Harper & Row*, the Court found that the first § 107 factor militated against a finding of fair use, where the defendant's use of the plaintiff's work "had

not merely the incidental effect but the *intended purpose* of supplanting [one of] the copyright holder's commercially valuable right[s]." *Harper & Row*, 471 U.S. at 562, 105 S.Ct. at 2231.

Viewed in this way, the first factor heavily favors Plaintiff. Defendant's poster does not imbue Plaintiff's prior work with a "further purpose or different character," and does not add anything qualitatively "new" to the mission served by Plaintiff's poster. Rather, the two works are intended for precisely the same audience, and provide their intended readers with almost entirely the same information. Indeed, this is no accident, as Defendant admittedly began developing own poster in earnest after it was unable to reach an agreement to purchase Plaintiff's work. Even then, Defendant's decision not to do business with Plaintiff apparently was not based on any dissatisfaction with the substance of Plaintiff's poster, but on her financial demands that Defendant deemed unreasonable. Defendant's use of Plaintiff's poster, therefore, had not only the effect, but the intended purpose of supplanting the demand for Plaintiff's work, at least among Defendant's membership.

Next, the fair use statute calls for consideration of the "nature of the copyrighted work." 17 U.S.C. § 107(2). This factor reflects the "recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586, 114 S.Ct. at 1175. Thus, when considering this factor, the courts distinguish between more "creative" works, such as musical compositions or works of fiction, and more information or functional works, such as bare factual compilations. *See Campbell*, 510 U.S. at 586, 114 S.Ct. at 1175.

In this case, this factor does not decisively favor either party. To be sure, Plaintiff's poster serves a purely functional, informative purpose, and is much more

akin to a factual compilation than a work of fiction. Nevertheless, it is important to observe that Plaintiff elected to present the chosen information in a poster format—as opposed to, say, a purely text-based recitation in an article, pamphlet, or similar documentary format—and that some of the selected information is conveyed and emphasized through graphics, bold text, varying fonts and font sizes, and capital letters. These creative aspects of Plaintiff's poster take her work outside the realm of a bare factual compilation, and render the Court's second-factor analysis inconclusive.

The third factor set forth in § 107 is the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This factor, like the second one, is indeterminate here. Defendant's poster is not a carbon-copy of Plaintiff's; its text is not incorporated verbatim from Plaintiff's work, and there are certain differences in the layouts of the two posters. On the other hand, as discussed earlier, the two works undeniably are similar in several respects, lending support to the conclusion that Defendant's use of Plaintiff's work was substantial in quality, if not quantity. *See Higgins v. Detroit Educ. Television Found.*, 4 F.Supp.2d 701, 707–08 (E.D.Mich.1998) (observing that the third fair use factor reflects both quantitative and qualitative considerations). If Debbie Bonk's testimony is credited, Defendant at least used Plaintiff's poster as a starting point in developing its own work, and any subsequent changes did not lead to a dramatically different product. On balance, then, this factor tips slightly toward Plaintiff.

Finally, § 107 calls for consideration of "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The Supreme Court has stated that "[t]his last factor is undoubtedly the single most important element of fair use," *Harper & Row*, 471 U.S. at 566, 105 S.Ct. at 2233, and the Sixth Circuit has observed that this factor "is at least *primus inter pares*, figuratively speaking," *Princeton Univ. Press*, 99 F.3d at 1385. This factor requires assessment of both actual and potential market harm. *Campbell*, 510 U.S. at 590, 114 S.Ct. at 1177.

Much of the Court's first-factor analysis applies here as well, and dictates the conclusion that the fourth factor favors Plaintiff. Though Defendant points to the paucity of evidence that its poster squelched any specific, reasonable prospects for sales of Plaintiff's work, this ignores the fact that Defendant and its constituent members were themselves a substantial part of the potential market for Plaintiff's poster, and that Defendant's dissemination of its own poster thoroughly destroyed this potential customer base. As the *Campbell* Court observed, where a subsequent work " 'supersede[s] the objects' of the original and serves as a market replacement for it, . . . it [is] likely that cognizable market harm to the original will occur." *Campbell*, 510 U.S. at 591, 114 S.Ct. at 1177 (citation omitted). The utter absence of any transformative use here gives rise to a presumption of market harm and "unfair exploitation," *Princeton Univ. Press*, 99 F.3d at 1386 (citations omitted), and Defendant has not adequately overcome this presumption. Accordingly, where Defendant's poster has significantly impaired Plaintiff's ability to market her work, and where this was not accidental but fully intended, the Court concludes that the fourth fair use factor decisively favors Plaintiff.

In sum, the crucial first and fourth § 107 factors substantially favor Plaintiff, and the second and third factors fail to significantly tip the balance back toward Defendant. Moreover, the evidentiary record strongly suggests that Defendant wished to acquire Plaintiff's poster and distribute this work to its membership, but that it simply concluded that Plaintiff's price demands were unreasonable. While Defendant was free to reach this business decision, it was not free to liberally borrow

from Plaintiff's poster in developing a substitute work that would satisfy the needs of its membership. *Cf. Images Audio Visual Prods., Inc. v. Perini Bldg. Co.,* 91 F.Supp.2d 1075, 1086 (E.D.Mich.2000) (observing that copyright holders generally are "under no obligation to be reasonable," and that the fair use doctrine does not operate to excuse compliance with unreasonable demands). To the extent that it did so—and, as noted, some degree of otherwise unlawful copying is implicit in Defendant's appeal to fair use—the Court concludes that its actions are not entitled to the protection of § 107 of the Copyright Act.

## C. Neither Party Is Entitled to Summary Judgment on Plaintiff's Lanham Act Claim

■ Finally, both Plaintiff and Defendant seek summary judgment in their favor on Plaintiff's unfair competition claim under the federal Lanham Act, 15 U.S.C. § 1125(a).[11] Again, however, the Court finds that neither party has demonstrated an entitlement to this requested relief.

First, the Court readily dispenses with Defendant's motion, as it rests upon a complete mischaracterization of Plaintiff's Lanham Act claim. Defendant views Plaintiff's Complaint as alleging garden-variety trademark infringement, and surmises that the title of Plaintiff's poster, "We Care About You," is the trademark at issue. Defendant then proceeds to analyze this purported trademark infringement claim in light of the eight factors endorsed by the Sixth Circuit as relevant to the "likelihood of confusion" element of such a claim. *See Marketing Displays, Inc. v. Traffix Devices, Inc.,* 200 F.3d 929, 933

(6th Cir.1999). Upon undertaking this analysis, Defendant argues that Plaintiff cannot establish any likelihood of confusion, principally because Plaintiff's "We Care About You" mark lacks the strength or secondary meaning necessary to create the potential for confusion among consumers.

This argument, however, misses the mark. In fact, Plaintiff has not asserted a trademark infringement claim at all, but instead is pursuing a theory known as "reverse passing off," where the alleged wrongdoer sells or distributes another's product under its own name. *See Waldman Publ'g Corp. v. Landoll, Inc.,* 43 F.3d 775, 780 (2d Cir.1994).[12] Specifically, Plaintiff alleges that Defendant has distributed her poster under its own name, with the intent and likely effect to cause confusion as to the origin of the poster. This conduct, if proven, lies within the prohibition against "false designation of origin" found at § 43(a) of the Lanham Act:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce ... any false designation of origin ..., which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person
>>
>> ...
>
> shall be liable in a civil action by any such person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

As observed in Plaintiff's motion, the Sixth Circuit recognized this "reverse

11. Plaintiff's Complaint also includes a common-law claim of unfair competition, presumably arising under Michigan law. However, Plaintiff's motion and briefs fail to address this claim, and Defendant mentions it only in passing in a footnote in its reply brief, speculating that Plaintiff perhaps has "abandon[ed] this 'make weight' theory." (Defendant's Reply Br. at 3 n. 3.) Because the parties have largely ignored

this common-law claim, the Court declines to address it here.

12. The Second Circuit has explained that "passing off," or "palming off," occurs when "A" sells its product under "B's" name, while "reverse passing off" occurs when "A" sells "B's" product under "A's" name. *Waldman Publ'g,* 43 F.3d at 780.

passing off" theory in *Johnson v. Jones*, 149 F.3d 494, 503–04 (6th Cir.1998), a case in which defendant Daniel Tosch removed plaintiff Douglas Johnson's name and seal from architectural plans authored by Johnson, and then placed his own name and seal on these plans. Under these facts, where "the defendant has taken the plaintiff's product and has represented it to be his own work," and where "trademarks are not the issue," the Court found it unnecessary to conduct the full eight-factor inquiry that would govern a more traditional trademark infringement action, because these factors "deal with the relationship between the plaintiff's and defendant's trademarks, not their products." *Johnson*, 149 F.3d at 503. Although likelihood of confusion remains a relevant inquiry in "reverse passing off" cases, the Sixth Circuit readily concluded that the facts in *Johnson* supported such a finding:

> [I]t is obvious beyond dispute that by taking Johnson's name and seal off of the plans and replacing them with his own, Tosch intended for people to assume that the plans were his, and not Johnson's. Indeed, this Court is hard-pressed to imagine what effect these actions could possibly have other than to convince anyone who looked at the plans that they were Tosch's work. Few are the cases demonstrating a more obvious and imminent likelihood of confusion.

149 F.3d at 503.

In seeking summary judgment in her favor, Plaintiff argues that this case is on all fours with *Johnson*. For its part, upon finally acknowledging in its reply brief the true nature of Plaintiff's Lanham Act claim, Defendant asserts that *Johnson* is clearly distinguishable, because Defendant developed its own poster rather than merely redesignating Plaintiff's work as its own. As suggested by the foregoing analysis of Plaintiff's copyright infringement claim, the Court is unable to adopt either

party's position, but instead concludes that Plaintiff's "reverse passing off" claim turns upon issues of fact that remain in genuine dispute.

As framed by the Second Circuit, a Lanham Act claim of "reverse passing off" includes four elements: (i) that the defendant "affixed a false designation of origin" to its product, (ii) that the defendant "used the false designation in commerce," (iii) that "the false designation is likely to cause consumer confusion," and (iv) that the plaintiff has been or is likely to be damaged by the false designation. *Waldman Publ'g*, 43 F.3d at 780. Regarding the first prong of this inquiry, the Second and Ninth Circuits disagree as to the degree of similarity that must exist in order to treat two written works as originating from a single source. The Second Circuit has adopted the "substantial similarity" standard used in copyright infringement actions. *See Waldman Publ'g*, 43 F.3d at 783; *see also Campbell v. Osmond*, 917 F.Supp. 1574, 1582–83 (M.D.Fla.1996) (adopting the Second Circuit standard). The Ninth Circuit, by contrast, requires that the later work be a "bodily appropriation" of the prior one, reasoning that the more lenient "substantial similarity" standard does not sufficiently ensure the requisite likelihood of consumer confusion. *See Cleary v. News Corp.*, 30 F.3d 1255, 1261 (9th Cir.1994).[13]

If the "bodily appropriation" standard were applied here, this Court doubts whether Plaintiff could satisfy it. As discussed earlier, even accepting that Plaintiff's poster served as a starting point or template for Defendant's work, the resulting poster produced by Defendant is different in a number of respects from Plaintiff's work, so that this Court previously was unable to conclude as a matter of law that the two posters are substantially similar. If the two works do not satisfy this more lenient standard as a matter of law,

---

**13.** The Sixth Circuit has not yet weighed in on this issue. *Johnson* is its sole "reverse passing off" decision, and the verbatim copying in that case plainly would satisfy either the Second or Ninth Circuit standard.

the same result surely pertains under the more rigorous "bodily appropriation" test.

On balance, however, this Court believes that the Second Circuit has the better approach. As noted in *Waldman Publishing*, the Ninth Circuit's concern with consumer confusion is better addressed through a separate element, which the Second Circuit in fact has incorporated into its four-element "reverse passing off" standard. *Waldman Publ'g*, 43 F.3d at 781. Thus, if two works are merely similar, and not virtually identical, it will be harder for the plaintiff to establish a likelihood of confusion. In addition, the express language of the Lanham Act, with its reference to a "false designation of origin," does not mandate the near-identity of two works, but seemingly is satisfied whenever a later work "originates" in an earlier one, even if it differs from the earlier work in certain respects. *See Campbell*, 917 F.Supp. at 1582–83; *see also Playboy Enters., Inc. v. Frena*, 839 F.Supp. 1552, 1562 (M.D.Fla.1993) (stating that a defendant may avoid liability for "reverse passing off" only by "modif[ying] a product to such an extent that the defendant converts it into something different in kind from the original product"). Finally, to the extent that the "bodily misappropriation" standard reflects the courts' concern that the Lanham Act not be construed as providing a redundant or overly expansive remedy where copyright law supplies an adequate basis for relief, *see, e.g., Shaw v. Lindheim*, 919 F.2d 1353, 1364–65 (9th Cir. 1990); *Goes Lithography Co. v. Banta Corp.*, 26 F.Supp.2d 1042, 1047 (N.D.Ill. 1998), this Court finds that this concern is obviated through the requirement, as adopted by courts in the Second Circuit, that a Lanham Act "reverse passing off" claim be supported by an "extra element" not present in a copyright infringement claim—namely, proof of some "affirmative act" through which the defendant falsely represents itself as the originator of the work in question. *See, e.g., Weber v. Geffen Records, Inc.*, 63 F.Supp.2d 458, 463–64 (S.D.N.Y.1999); *see also EFS Market-ing, Inc. v. Russ Berrie & Co.*, 76 F.3d 487, 493 (2d Cir.1996) (observing that "the Copyright Act and the Lanham Act address different harms," with "[t]he first follow[ing] from a lack of originality, [and] the second from a likelihood of confusion" (internal quotations and citation omitted)); *Campbell*, 917 F.Supp. at 1583 (noting that the Lanham Act's focus on consumer confusion provides a basis for distinguishing claims brought under copyright law).

■ Applying these principles to the present case, the Court finds that issues of fact preclude a determination as a matter of law regarding the first element of a "reverse passing off" claim. Plaintiff has produced sufficient evidence of "affirmative acts" of misrepresentation—chiefly, Defendant's replacement of Plaintiff's copyright notice with its own "MLBA" logo, its statement in its poster that "[t]his information is brought to you by ... the Michigan Licensed Beverage Association," and its dissemination of its poster to its membership without any attribution of authorship to Plaintiff—to alleviate the concern that her Lanham Act claim is merely a repackaged claim of copyright infringement. However, in addressing Plaintiff's separate claim under the Copyright Act, the Court already has held that it cannot determine, as a matter of law, whether Plaintiff's and Defendant's works are or are not substantially similar. It follows that no such determination can be made in the context of Plaintiff's Lanham Act claim, and that Plaintiff, therefore, is not entitled to summary judgment in her favor on this claim.

Neither is Defendant entitled to summary judgment in its favor, unless it establishes as a matter of law that Plaintiff has garnered insufficient evidentiary support for one or more of the remaining three elements of her "reverse passing off" claim. Of course, Defendant is significantly hindered in this effort by its failure to squarely address Plaintiff's "reverse passing off" theory in its briefs. Nevertheless,

certain of Defendant's challenges to Plaintiff's purported trademark infringement claim carry over to the present context, and suggest Defendant's position that Plaintiff cannot sustain the "consumer confusion" and damage elements of her claim.

Turning, then, to the remaining elements of a "reverse passing off" claim, the Court first finds that Plaintiff has produced sufficient evidence to forestall summary judgment on the "commerce" element of her claim. In particular, Plaintiff points to evidence that (i) Defendant displayed and attempted to sell its poster at its annual convention, which was attended by both Michigan and out-of-state residents, and (ii) Defendant advertised this poster in its "Beverage Journal," which is circulated to members and subscribers outside the State of Michigan.

Regarding likelihood of consumer confusion and actual or likely harm, Defendant relies on Plaintiff's limited success in selling her poster,[14] and her apparent abandonment of any further efforts to sell her poster since early 1998, arguing that these facts show that Plaintiff's work lacked the widespread dissemination or recognition necessary to engender possible consumer confusion or potential economic harm. Yet, as observed in *Johnson* and other decisions, a plaintiff in a "reverse passing off" case need not address such considerations as "distinctiveness" or "secondary meaning" that feature prominently in more traditional trademark infringement actions. *See Johnson*, 149 F.3d at 503; *Waldman Publ'g*, 43 F.3d at 784 n. 7; *Blank v. Pollack*, 916 F.Supp. 165, 170 (N.D.N.Y.1996).

Indeed, by falsely designating the origin of a work and denying the plaintiff the credit which is due, the defendant in a "reverse passing off" case defeats any opportunity for the true author to develop any consumer association between herself and her work. *See Johnson*, 149 F.3d at 503 (noting that, where the defendant had removed the plaintiff's name from architectural plans and replaced it with his own, "this Court is hard-pressed to imagine what effect these actions could possibly have other than to convince anyone who looked at the plans that they were [the defendant's] work"); *Waldman Publ'g*, 43 F.3d at 784 n. 7; *Blank*, 916 F.Supp. at 170–71. Similarly, as to the element of harm, "[t]he originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." *Waldman Publ'g*, 43 F.3d at 785 (internal quotations and citation omitted); *see also Playboy Enters.*, 839 F.Supp. at 1562 (noting that the plaintiff in that case had been "denied the right to public credit for the success and quality of its goods").

The Court finds that the record is sufficient as to these elements of consumer confusion and harm to permit Plaintiff's "reverse passing off" claim to go forward. As noted earlier, assuming that Defendant's finished work is found to be substantially similar to Plaintiff's, Defendant took affirmative steps to deny Plaintiff the proper credit for her authorship, by (i) removing her copyright notice from the poster and replacing it with Defendant's logo, (ii) affirmatively stating in the poster itself that its information was "brought to you by ... the Michigan Licensed Beverage Association," and (iii) disseminating its poster to its membership, and advertising the poster in its "Beverage Journal," without in any way indicating that this work originated with someone else. It can be inferred, for present purposes, that these actions created consumer confusion— among, for example, the constituent members of the Defendant Association—as to

14. Although Plaintiff has attached several invoices as exhibits to her Lanham Act motion, (*see* Plaintiff's Motion, Ex. N), most of these invoices lack sufficient detail for the Court to determine whether they involve the specific "We Care About You" poster at issue here. Defendant apparently concedes, however, that Plaintiff has sold at least 35 of her posters.

the true origin of Defendant's poster. Moreover, these same facts create a genuine issue as to the element of harm, where the two parties plainly are competing in the same market (drinking establishments), where Plaintiff lost, at a minimum, any opportunity to market her poster to Defendant's membership,[15] and where she has been unable to capitalize on any goodwill or name recognition that might otherwise have resulted if she had been given credit for her purported authorship of Defendant's poster. Consequently, the Court concludes that neither Plaintiff nor Defendant is entitled to summary judgment on Plaintiff's "reverse passing off" claim under the Lanham Act.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's October 31, 2000 Motion for Summary Judgment of Copyright Infringement is DENIED. IT IS FURTHER ORDERED that Plaintiff's October 31, 2000 Motion for Summary Judgment of Lanham Act Violation also is DENIED. Finally, IT IS FURTHER ORDERED that Defendant's October 31, 2000 Motion for Summary Judgment also is DENIED.

---

15. Defendant argues that its membership does not encompass all, or even most, of the commercial liquor license holders in the State of Michigan, and that Plaintiff remained free to sell her posters to those establishments which are not members of the Defendant Association. Plaintiff, however, need not establish the complete elimination of all potential markets in order to sustain the element of harm under her Lanham Act claim.